COPY

1

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF KANSAS
 2                     TOPEKA, KANSAS

 3                                        MAR - 4 2003

 4      UNITED STATES OF AMERICA, )    RALPH L. DeLOACH, Clerk
        --------------- Plaintiff,)    By_____
 5                                )
                 vs.              )  Case No.
 6                                )  00-40104-01/02
        WILLIAM L. PICKARD and    )
 7      CLYDE APPERSON,           )
        ------------- Defendants. )
 8

 9            TRANSCRIPT OF HEARING ON MOTIONS
                          BEFORE
10            HONORABLE RICHARD D. ROGERS
                            on
11                 December 17, 2002

12      APPEARANCES:

13      For the Plaintiff:   Mr. Gregory G. Hough
                             Asst. U.S. Attorney
14                           290 Federal Building
                             444 Quincy Street
15                           Topeka, Kansas  66683

16      For the Defendant:   Mr. William Rork
        (Pickard)            Rork Law Office
17                           1321 SW Topeka Blvd.
                             Topeka, Kansas  66612
18

19      For the Defendant:   Mr. Mark Bennett
        (Apperson)           Bennett, Hendrix & Moylan
20                           5605 SW Barrington Court S
                             Topeka, Kansas  66614
21
        Court Reporter:      Jana L. Willard, CSR, RPR
22                           Nora Lyon & Associates
                             1515 South Topeka Avenue
23                           Topeka, Kansas  66612

24

25
```

287

COPY 2

1         THE COURT:  We have the case of

2    United States versus Pickard and Apperson and

3    this is Case No. 40104-01.  Let's have the

4    attorneys announce your appearances and then

5    we'll proceed.

6         MR. HOUGH:  May it please the Court.

7         THE COURT:  Yes, sir.

8         MR. HOUGH:  Your Honor, the

9    government appears through Assistant United

10   States Attorney Greg Hough.

11        MR. RORK:  Your Honor, if the Court

12   please, William Leonard Pickard appears in

13   person and with counsel, Billy Rork.

14        MR. BENNETT:  May it please the

15   Court, Mr. Apperson appears in person and by

16   his attorney, Mark Bennett.

17        THE COURT:  All right.  The purpose

18   of this hearing is a pretrial conference under

19   Classified Information Procedures Act.  And as

20   I've just said the purpose of the hearing is to

21   conduct a pretrial conference under the

22   Classified Information Procedures Act.  And we

23   will need to hear from Defendant Pickard

24   concerning exactly what classified information

25   he intends to present at trial.  The Court will

1    assume that he intends to offer the same

2    evidence in terms of testimony that he offered

3    at a prior hearing.  However, the Court expects

4    him to specifically identify what exhibits and

5    if they contain classified information that he

6    intends to present at trial.

7         The Court then expects the government to

8    specifically identify whether it objects to the

9    use and admissibility of any of the classified

10   information.  The Court further understands the

11   arguments by the government that the

12   aforementioned defenses, including the public

13   authority defense, are irrelevant to the

14   charges contained in this case.  However, the

15   Court has already addressed those issues in

16   denying the government's prior motion in

17   limine.  The Court has determined that the

18   defendant has sufficiently articulated defenses

19   that are relevant to the crimes charged.  The

20   Court intends to use the pretrial conference to

21   determine if any classified information will be

22   used at trial and what shall be done if that is

23   the case.

24        December 13th, 2002, the government filed

25   a memorandum concerning the defendant's use of

1        the public authority defense.  The government

2        again seeks an order barring the defendant from

3        relying on the public authority defenses or

4        making reference to Operation Infrared.  The

5        government asked the Court, in light of

6        Pickard's testimony at the hearing on November

7        8, to reconsider its previous ruling allowing

8        the defendant to present the public authority

9        defense.

10       We would like to hear what Mr. Pickard

11       has to offer or his attorney and we can then

12       hear from the government and Pickard on the

13       issue to see if we want to make any changes.  I

14       think that's where we are.

15       Now, Mr. Bennett you've also raised one

16       matter with me and you wanted to know if our

17       earlier ruling on polygraphs prevented you from

18       asking Gordon Todd Skinner if the government

19       ever required him to take a polygraph.  In the

20       earlier order we granted the government's

21       motion in limine and held the evidence

22       concerning the polygraph examination

23       administered to Skinner would not be admitted.

24       I believe that we meant that this-- that this

25       would exclude both the fact that examinations

1    were given and their results.  Accordingly I do

2    not believe that we will allow you, Mr.

3    Bennett, to ask Skinner if the government ever

4    required him to take a polygraph examination.

5    To the extent that our prior ruling was not

6    broad enough to cover this interpretation, I

7    would indicate that we are now extending it.

8    So I think that's the answer on that.

9         MR. BENNETT:  All right, Judge.  And,

10   in fact, then under 608(b) it would not be

11   admissible is what the Court is saying?

12         THE COURT:  Right.

13         MR. BENNETT:  All right.

14         THE COURT:  All right.  Now, let's go

15   ahead with the matters I first suggested and

16   then we'll see if there are other matters that

17   need to be addressed.  The trial of this case

18   is scheduled for January 13th, 2003, and we

19   need to work diligently to get all this

20   together.  So let's proceed then with, Mr.

21   Rork, what classified information you people

22   want to talk about.

23         MR. RORK:  Judge, I just filed this

24   morning a-- what was captioned as a

25   supplemental motion for discovery to assist the

1      prosecution in complying with previous

2      discovery requests and as per CIPA statutory

3      compliance.  And the documents that the Court

4      is talking about, for purposes of

5      clarification, are attached as Exhibit No. 1.

6              MR. HOUGH:  Excuse me, just a minute,

7      Judge.  When we were served with these shortly

8      after 11 o'clock today they didn't have

9      document numbers on them.  If the Court has

10     assigned document numbers could we have those

11     so that-- I mean, just for purposes of tracking

12     the argument?

13             THE COURT:  I don't think we have

14     them.

15             THE CLERK:  They haven't been

16     assigned numbers yet.

17             MR. HOUGH:  Thank you.

18             MR. RORK:  And, Judge, Mr. Pickard

19     specifically in that document under page two

20     entitled specific discovery requested, states

21     the documents that are relating to the

22     disclosure under CIPA and paragraphs numbered 1

23     through 41 and then attached to that specific

24     request Exhibit No. 1, which is what I changed

25     to number two where the date had 2001, the

1    names, addresses, and the information they

2    would have reference receipt of the Infrared

3    documents. Mr. Hough has asked me to provide

4    the 32 certified mail receipts which I will get

5    produced very shortly. Those are the items

6    that he requested that the government, pursuant

7    to CIPA, make a contact with him. And they

8    also list Exhibit No. 2 and Exhibit No. 3,

9    which again specifically references, Judge, the

10   documents, the names and the people and what

11   the government would need to determine if the

12   recipient and holder of those documents would

13   indicate it was classified information or not.

14        And in response to that, judge, I think

15   Mr. Pickard, in talking with him-- I would ask

16   Mr. Pickard, these are the documents in this

17   motion that you assisted in preparation that

18   you want to have, that you believe are

19   classified or would lead to classified

20   information?

21        MR. PICKARD: Yes. It's my belief,

22   sir, that the documents, in addition to being

23   provided under Brady sometime ago and earlier

24   CIPA request upon submission to numerous

25   federal agencies would be classified as

```
 1          confidential, especially four months after the
 2          invasion of Afghanistan since it was a
 3          substantial document concerning General
 4          Dostum's analysis of memoranda within the
 5          agencies that would be written back and forth
 6          and we'd like those produced.
 7                    THE COURT:  Mr. Rork, do you have any
 8          of this material or is this what you're asking
 9          for?
10                    MR. RORK:  Judge, this is the
11          material that we're specifically identifying
12          that the government has in its possession that
13          they need to disclose under CIPA whether it's
14          considered classified or not.  We don't have
15          it, no.  We have the documents that were
16          presented to those agencies, yes, that's the
17          document the Court has already received.  The
18          information Mr. Pickard requests to further
19          assess before he produces that, now that it's
20          been provided to those agencies, his documents
21          that the Court previously has and any documents
22          generated as a result may very well now be
23          classified and he can't introduce them until
24          they advise Mr. Hough it's classified or not.
25          But we don't have a lot of the documents that
```

1     are being requested.  The agencies themselves

2     would have the documents and would have to

3     indicate whether they are classified or they

4     can be released.  I think Mr. Hough just needs

5     to contact them, as a government

6     representative, and they can say classified or

7     not classified and that would be the end of

8     that issue real quick.

9          THE COURT:  Mr. Hough, what do you

10    say about this, are you ready to do the

11    discovery in this case?

12         MR. HOUGH:  Judge, as the Court's

13    ordered indicated the defendant must make, in

14    the words of the Court, quote, specifically

15    identify what exhibits if they contain

16    classified information that he intends to use

17    at trial, end quote.  The document has been

18    filed with the Court, didn't do that.  We can't

19    look into a crystal ball and we can't approach,

20    just generally, federal agencies and say

21    generally do you have anything on these topics.

22    That's not what CIPA anticipates.  CIPA, as our

23    response, which was filed at 1 o'clock in

24    response to these 11 o'clock pleadings,

25    indicated CIPA was not designed to enlarge Rule

1    16 and that's all they're trying to do here,

2    Judge.  They've not met the burden that the

3    Court established in the last order that was

4    filed in this matter, Document 222.  So this

5    request should be denied.

6              MR. RORK:  Judge, if I can just

7    briefly respond.  In light of the Court's order

8    setting forthwith specificity what documents

9    and items Mr. Pickard wanted given his

10   confinement in Leavenworth and my

11   unavailability that is what we prepared in a

12   time period from receipts of the memorandum to

13   identify those agencies that have the

14   documents.  So we're not asking the government

15   for additional discovery.  But when the

16   agencies receive those documents they're logged

17   in, they're then either determined to be

18   classified or not and may then have generated

19   additional classified information.  That Mr.

20   Pickard wants to have the government indicate

21   whether they would object to their

22   introduction.  The introduction of the

23   documents are ones the Court currently has.

24   And, yes, there may be documents generated from

25   these agencies upon receipt, but we can't

1    identify them with specificity until they
2    indicate it's classified or not.  If, for
3    instance, some of the ones Mr. Hough has
4    already talked to indicate not classified,
5    that's the end of that request for 1 through
6    32.  If they say it's classified, they would
7    have to then identify whether or not the
8    materials we have provided you and Mr. Hough
9    are in that classification.  If they are,
10   whether they can then be produced at trial.  So
11   that's the dilemma we're in is that what
12   they've received may now be classified
13   documents and we don't know which ones that
14   they may have classified or not.  And there
15   were other documents generated from these
16   documents, especially the heroin trafficking,
17   the prior contacts of Mr. Pickard in
18   Afghanistan, that they may not want disclosed
19   at this time and made publicly known.  So
20   those-- we didn't want to name the documents
21   specifically as to what-- other than what's in
22   the record so that they can identify whether
23   those documents have now been classified or
24   could relate to further classified materials.
25   If I could consult with Mr. Pickard just one

1    second.  (Pause).  That's essentially-- yes,

2    Judge, that would be everything that

3    specifically succinctly sets forth documents

4    Mr. Pickard believes would be either identified

5    by the government agencies named as classified

6    or unclassified and it's that simple.

7         THE COURT:  Mr. Rork, it seems to me

8    that you're asking the government to go to

9    every agency in the United States and ask

10   them-- and give them a little general

11   information about something that happened in

12   Afghanistan and then asking them if anything in

13   that agency-- in that affair is classified.  Is

14   there any indication that any of the materials

15   supplied by the defendant are classified, any

16   information at all?  And please give it to me,

17   that's what I'm asking you to do.  You're

18   talking about things up here in the sky.

19        MR. RORK:  Judge, we're just talking

20   about the 32 agencies that signed the

21   certificate indicating receipt of the documents

22   titled Infrared.

23        THE COURT:  Where did the receipts

24   come from-- where did the documents come from?

25        MR. PICKARD:  From the U.S. Postal

1    Service, documents from Mr. Rork's law office.

2    The documents were Infrared itself,

3    specifically to the Assistant Secretary of

4    State describing General Dostum's offer.

5                   MR. HOUGH:  May I ask, Judge?

6                   THE COURT:  Yes, Mr. Hough.

7                   MR. HOUGH:  What is the date of the

8    certificates and from whom did they come of the

9    32?

10                   MR. RORK:  Judge, I believe Mr. Hough

11   could look at Exhibit No. 1 attached to the

12   name of the agency and advisor to the

13   president, there is a date indicating recipient

14   range from July 2002, May 2002 all dates are in

15   February, May, June, July of 2002.  Is that

16   correct?

17                   MR. HOUGH:  So it would have started

18   February of the year 2002 when they started

19   receiving these documents-- these Infrared and

20   signed receipts, those are the documents.  Is

21   that correct, Mr. Rork?

22                   MR. RORK:  The documents that are

23   titled, quote, Infrared are a compilation of

24   documents from several years before.

25                   MR. HOUGH:  The certificates of

1          receipt, the 32, the earliest one of those is

2          February 2002, correct?

3                    MR. RORK:  That's correct.

4                    MR. HOUGH:  Thank you.

5                    MR. RORK:  And, judge, the date of

6          February 2002 through July 2002 are the date

7          those agencies received the compilation of

8          documents that were arranged from 1996 to the

9          year 2002.  From 1994 through 2002.  And those

10         documents are ones that previously had been

11         worked on by Mr. Pickard in his capacity under

12         public authority where he had been providing

13         information to the government agencies from

14         1994 to the present.

15             I would advise the Court as an officer of

16         the Court that I don't doubt that probably 70

17         percent of the agencies may have just

18         transferred those back to the defense agencies,

19         but those are the ones specified that they

20         needed to be provided to confirm the interest

21         and the prior activities of Mr. Pickard given

22         the events that happened September 11, 2001.

23         That was what brought their significance,

24         that's why they were requested.  And then when

25         they received those documents to aid in the

1    intelligence factor, it went back to 1994.  And

2    I don't think that the Senate Committee that's

3    looking at what could have prevented the

4    September 11th occurrence has been directed,

5    but they were requesting to be provided in

6    order to utilize the information.  And the

7    problem now is how those are being used by the

8    major defense agencies-- well, I can give an

9    example.  Mr. Pickard's wife, the mother of his

10   child, live in California, the people that have

11   offered to have him killed and do other things

12   live there and he doesn't want it brought to

13   their attention.

14            MR. HOUGH:  Are you talking about Ms.

15   Harlow?

16            MR. RORK:  The principals of

17   Infrared, the documents that have been provided

18   to the government under the fact they would not

19   be disclosed have contacted Mr. Pickard's

20   immediately family now and know where they

21   live.  His primary concern is their safety.

22   And the documents we're requesting be provided

23   to assist in the events that were going on all

24   of which generate further confirmation of Mr.

25   Pickard's acting under public authority, but a

1   lot of those, Judge, may have just wanted them

2   to have them and I don't believe-- I mean, we

3   gave the ones that they were all sent to,

4   number one.  We tried to narrow it down.  And

5   then there's certain ones Mr. Pickard believes

6   are more important than others.  And the

7   government indicated they wanted everything we

8   sent so that's what we gave you everything that

9   was sent.  If they want to use the fact that 70

10  percent of them don't have anything, that's

11  fine.  But we wanted to comply with them to

12  give them everything that was sent.  The actual

13  recipients would most likely be the defense

14  people.  These are all the actual recipients.

15  And we believe these, Judge, they're not-- all

16  they have to do then-- we're not asking them to

17  do to do more than say, hay, you received the

18  Infrared documents, as a result of their

19  receipts have any of those been classified or

20  have you caused parts of them to be classified,

21  yes or no.  We'll just produce them and we

22  won't violate it.  Mr. Pickard's primary

23  concern are some safety concerns.  In fact,

24  Judge, there was a brief conversation with

25  General Dostum in the last few months that's

1     been provided to the state department to use in

2     further intelligence gathering activities and

3     have an angle in place.  Also one of the

4     individuals who had agree with Mr. Pickard to

5     try trade missiles for the heroin is to be

6     released from prison in a month or two.

7                THE COURT:  When did that supposedly

8     take place?

9                MR. RORK:  All of this took place in

10    the last eight years.

11               MR. PICKARD:  That specific event,

12    sir?  Which event do you refer to, please?

13               THE COURT:  Well, the trading heroin

14    for missiles and so on.

15               MR. PICKARD:  The stinger offer from

16    General Dostum occurred between '94 and '98.

17    At that point the Taliban took over and he lost

18    the weapons.  That trafficker finishes his

19    sentence in the next month.  He's being taken

20    to INS and transferred to Khabul in February.

21    I'm in contact to him by letter and also his

22    letters are being referred to the U.S. Customs,

23    the supervisor of San Francisco, who has known

24    about this since its inception.

25               THE COURT:  Mr. Hough, does the

1      government have any information that any of

2      this material is classified?

3              MR. HOUGH:  Judge, based upon what

4      has been given in these documents and in these

5      disclosures, as the Court can tell, the

6      defendant has not identified classified

7      information or classified documents.  So what

8      he's offering now is 32 agencies that beginning

9      in February of the year 2002 received copies of

10     Operation Infrared and asking for the

11     government then to go about generally

12     contacting 32 agencies.  As the case law that

13     we cited in our response clearly makes-- I

14     mean, if you look at the Pringle case, if you

15     look at the Musa case, if you look at any of

16     the cases cited in our documents CIPA must be

17     read in conjunction with Rule 16.  It's not

18     meant to expand upon it and cause the

19     government to engage in a fishing expedition

20     for the defendant to attempt to find some

21     documents that have, in the words of the Court

22     that we've cited, theoretical relevance to the

23     matters alleged in the indictment.  We can't

24     even get there based upon what the defendant is

25     showing.  What the defendant is asking this

1        Court to do is to authorize a government

2        sponsored fishing expedition without

3        identifying with specificity classified

4        information he seeks.  He is submitting there

5        may be and so we are asking for any and all

6        information from 32 agencies that may have some

7        bearing on a person of his name, a person of

8        Skinner's name, Operation Infrared, Mohammed

9        Akbar, General Dostum.  Well, it's-- Judge,

10       it's, as you can see, impossible for the

11       government to do anything based upon these

12       disclosures.  And the bottom line is we're here

13       today based upon this Court's order earlier

14       this month for the defendant to specifically

15       identify classified information.  We're not

16       there.

17                MR. RORK:  Judge, if I could just

18       briefly respond.  Pursuant to Section 5 of the

19       CIPA Act we did, as it indicates, within 30

20       days prior to trial brief-- provide-- shall

21       provide a brief description of the classified

22       information and that he reasonably expects to

23       disclose at any proceeding.  It then says the

24       United States Attorney shall thereafter--

25       excuse me, known defendant shall disclose any

1       information known or believed to be classified

2       until the United States has been afforded a

3       reasonable opportunity with respect to this

4       action of the CIPA determination has been

5       classified.  We've briefly described the

6       materials as brief as we can without violating

7       the CIPA notice with where they are at.  And

8       it's not a fishing expedition because now what

9       has to be done is for the United States to

10      determine are these classified or not.  It's

11      all Infrared.  This is not Skinner, this is all

12      Pickard and Pickard's actions for the

13      government and it's documented Infrared.  If

14      they have nothing for Infrared, for instance,

15      received, discarded; received, discarded.

16      Military received forwarded to Army

17      Intelligence, can't talk about it.  Those are

18      the documents Mr. Pickard is concerned about is

19      what they have done with them at this point.

20      You have those documents.  But in addition Mr.

21      Pickard believes-- reasonable believes under

22      his brief description based upon the past

23      information with them the analysis of those

24      documents are then drawn up, the information is

25      shared, and photographs, data, taped phone

1          conversations, those-- when he's given them to

2          the state department before are never

3          disclosed.  And so the problem that he has is--

4          we'll be glad to introduce them in trial and

5          then have the United States Attorney General or

6          somebody else intervene and cause a holding and

7          we're trying to avoid that problem.

8                    THE COURT:  I'd rather have you take

9          a chance and get this case tried.  You have

10         great concern for the government and I

11         appreciate the fact that you do not want any

12         secrets disclosed, but we're trying a case

13         about a missile base up at Wamego, Kansas that

14         has been now delayed two years while-- and I

15         don't know why it's been delayed two years.  I

16         know we had to-- because of your illness we had

17         to delay that.  But I'm just trying to find out

18         where the classified information is and I don't

19         want to go through another year or two years

20         while we-- while we have the government try to

21         contact every agency in the United States to

22         see if there's anything going on about this

23         fairy story in Afghanistan.  And I'd like to

24         get to the trial of this case and that's what

25         I'm trying to do.

1              MR. HOUGH:  Judge, we understand and

2       we agree with the Court in that regard.  And we

3       would in that regard point the Court to the

4       line of cases indicating again you have to read

5       CIPA in conjunction with Rule 16.  Where we're

6       at here is the defendant asking the Court to

7       order the government to go on this expedition

8       to find documents that they cannot specifically

9       identify, documents that the Court must first

10      determine are material and under the case law

11      look at the Bartlett case at 896 F.2d 900 at

12      905, the Anderson case 872 F.2d 1508 at page

13      1514, the Scartlet case 897 F.2d 63 at page 70,

14      the Unex case 867 F.2d at page 622, the Craig

15      case 740 F.2d at page 15.  You do the same

16      analysis that you would under Bagly, under

17      Agers, this stuff would only be relevant if

18      there was a reasonable probability that

19      assuming it exists and assuming that it was

20      disclosed it would make some material change in

21      the proceeding, it's helpful to the defendant

22      and would materially affect the outcome of the

23      trial.  Based upon the disclosure before the

24      Court now you can't make those determinations,

25      Judge, because they can't identify or won't

1      identify with the specificity required by the

2      act, the law, and this Court's order the

3      documents they seek whether or not they have

4      classified information.  So the Court is

5      hamstrung, much less the government because the

6      defendant has not met his burden.

7                MR. RORK:  And, Judge, I believe the

8      government is attempting to try to reargue the

9      previous ruling.  But what we're saying, Judge,

10     is you have the documents.  Those documents

11     we're talking about are specifically those that

12     have been received by these agencies.  All the

13     agencies--

14                THE COURT:  You say I have the

15     documents.

16                MR. RORK:  I said you have the Court

17     record, they've been provided to the Court

18     record or some of the documents have been

19     presented in camera.  I think they've all been

20     presented in camera, the Infrared.  Those are

21     the documents that are Infrared.  And these are

22     known, confirmed recipients.  All the

23     government has to do is say received it, yes;

24     classified, yes or no.  We're not asking for

25     more documents.  We're not asking for anything

1          other than corroboration received, disclosed;

2          received, don't disclose.

3                    THE COURT:  Are you now claiming that

4          all these documents are classified?

5                    MR. RORK:  I believe-- Mr. Pickard

6          believes in his prior contact with the

7          government of September 11, 2001, and the

8          nature of this circumstance that if it wasn't

9          routinely classified before that date as they

10         generally were, they sure are now.  He believed

11         before they were always classified, well,

12         because of the contents of them that go into

13         recorded conversations about doing more

14         criminal activity in the last six months.

15                   MR. HOUGH:  Well, Judge, it's

16         impossible, we would respectfully submit, for

17         this Court to make a determination that events

18         that occurred in the last six months or events

19         that occurred at their very earliest February

20         of this year have any relevance at all, could

21         ever been material to the crimes that occurred

22         in October and November of the year 2000 as

23         alleged in this document.  I mean, there's no

24         way that you could make that leap.

25                   MR. RORK:  And, Judge, the problem

1     with the government-- I understand Mr. Hough

2     usually has a wide area of thought process, but

3     again, he's being blinded by the thoughts.

4     This is a continued activity of Mr. Pickard

5     under authority of public authority that he was

6     doing things and told people that they would

7     receive them, provide them.  They would have

8     never been brought out in this particular case

9     and the only relevance he deals with is public

10     authority, how he gathered information and we

11     put about forth in the document what he has

12     done.  It's not that it just happened in 2002.

13     These are a compilation of eight years of

14     documents that became more relevant after

15     September 11th.

16            MR. HOUGH:  Well, Judge, if they were

17     not-- I apologize--

18            THE COURT:  Mr. Hough, do you know

19     what documents they have submitted?

20            MR. HOUGH:  Do I know what documents

21     that they've submitted?

22            THE COURT:  That he has listed and

23     claims he has submitted to the Court.

24            MR. HOUGH:  I don't know what he

25     would have submitted to the Court, other than

1      the attachments to his pleadings which would be

2      Infrared and a list-- this list of individuals

3      that is contained.

4                MR. RORK:  If I could help you, Mr.

5      Hough, it's the same documents you indicated

6      that the agencies sent to you and returned some

7      to you, Infrared documents is what we're

8      talking about.

9                MR. HOUGH:  The exhibits attached to

10     the supplemental motion to assist the

11     prosecution in complying with the previous

12     discovery request, which was filed today at

13     10:45.  That and then previously, as the Court

14     is aware, he's attached Infrared to other

15     documents.  Those are the only documents--

16                THE COURT:  Are you claiming that any

17     of those documents are classified?

18                MR. HOUGH:  Well, Judge, the only

19     document is Infrared.

20                THE COURT:  Anything he submitted are

21     you claiming it's classified?

22                MR. HOUGH:  No, we have no reason to

23     believe-- well, the only thing that he has

24     submitted is Infrared as a document, that is

25     not classified.  Now, what he is asking is that

1    we go on a 32-agency fishing expedition to see

2    if after they received that document sometime

3    after February 2002 those agencies generated

4    any reports, memorandum, or leads, or whatever

5    as a result of that without identifying what

6    they may be.  The defendant hasn't identified

7    those.  He has merely identified that post

8    February 2002 that document was sent to 32

9    federal agencies.

10                THE COURT:  But who sent it?

11                MR. HOUGH:  Well, the defendant has

12   represented that he, through either-- through

13   an attorney and I don't know who that attorney

14   is, but-- I mean, the bottom line is if he

15   sends that out February 2002 how could

16   September 11th have been prevented.  How could

17   it have any bearing on events that occurred in

18   this indictment in October, November 2000?  I

19   mean, there's-- there's no way that can be--

20   even assuming he could identified-- that he

21   could identify that there were documents

22   generated by these agencies and he could say

23   these specific documents of them are

24   classified, which he has to do and the Court

25   has recognized, even if he could do that, he

1    could not prove, as he must, that they are

2    material to the defense of a crime that

3    occurred in October and November of the year

4    2000.  Because those agencies didn't receive

5    this document until a year-and-a-half later,

6    February of this year.

7              THE COURT:  Well, let me ask you, do

8    you know if any of the things you just

9    mentioned are classified?

10             MR. HOUGH:  Judge, I don't know if

11   anything was generated by-- first of all, I

12   don't know who the 32 agencies were.  I don't

13   know who the 32 individuals at the agencies

14   were.  And what I do know is that three

15   agencies, maybe four, I'll have to check,

16   routinely dismissed it and just sent it to our

17   office indicating that because of these

18   proceedings they were not-- they were washing

19   their hands of the whole thing.  And so we were

20   aware of generally that sometime after February

21   of 2002 Mr. Pickard was recirculating a

22   document he authored in 1998.

23             THE COURT:  Well, with no more

24   information than I have about any classified

25   information and if you have nothing that you're

1      going to hand me which says that this
2      information is classified, if this ploy is
3      allowed I don't think there will ever be
4      another criminal case tried in the United
5      States. If you can-- if you can delay it and
6      stop it with a scheme and a plan like we're
7      using here now. You can answer that if you'd
8      like to.
9           MR. RORK: I would, Judge. And the
10      way I'd answer that is Mr. Hough just indicated
11      to you he has those documents. The documents
12      Mr. Pickard has referred to were documents that
13      he has generated since 1994 in assisting the
14      government. In an effort to resolve issues in
15      this case he was requested to produce those
16      documents back and the procedure was to
17      determine whether or not Mr. Hough's case would
18      be put on hold and Mr. Pickard would be removed
19      from these premises and continue his
20      investigation. Due to Mr. Hough blocking that
21      effort for Mr. Pickard to continue the
22      investigation he's been working on for eight
23      years, he's stopped. And the agencies have
24      indicated they'll submit these materials and
25      they would weigh whether or not they would then

1    tell Mr. Hough, Mr. Hough, your case can go to

2    the back burner, we want to proceed with what

3    Mr. Pickard has done for eight years.  It's not

4    an ploy, it's not something in a round.  It's

5    something Mr. Pickard worked on for eight

6    years.  It's our contempt it's not a ploy and

7    is part of his defense in public authority and

8    what he was doing with Skinner and the missile

9    base and Marquardt investigation where he

10   assisted the government in collecting heroin

11   off the streets, provided heroin samples that

12   you and I would be arrested for.  And in a like

13   manner provided information to the government

14   to get Marquardt in the phentynl case, he had

15   been providing this information in that case.

16   It was only when the agencies indicated Mr.

17   Hough would not negotiate his case that the

18   documents were then requested to be all

19   complied, number one, and, number two, well,

20   Mr. Pickard let's see, since you've been locked

21   up for a year, if you've done anything of

22   merit.  And during the time Mr. Pickard had

23   been locked up there were reported phone

24   conversations and continued-- these people in

25   Russia don't know he's locked up.  And further

1        information was given to the national security
2        agency, the state department, the defense
3        department and said, look, my investigation of
4        the last eight years is still hot and alive and
5        legally is who is going to get it go Mr.
6        Hough's Afghanistan-- excuse me, Mr. Pickard's
7        Afghanistan or Mr. Hough's Topeka, Kansas case.
8        And all the letters say, until Mr. Hough does
9        this or that we won't do anything.  So now that
10       Mr. Pickard knows that the inter-agency is not
11       to go to produce it, he intends to show his
12       course of conduct for eight years with the
13       conduct and what he's done with the government
14       and the relevancy of that to his public
15       authority.  It hasn't been through his-- Mr.
16       Hough indicated he had a pile of these Infrared
17       documents and we'll be glad to provide him
18       another one specifically, but they were sent to
19       the agency that he was aware of that Mr.
20       Pickard had to convince those agencies that the
21       continued Afghanistan investigation he was on,
22       in light of September 11th, was more important
23       than the Topeka, Kansas trial.  And as Mr.
24       Hough's letters and responses came back, like
25       my one motion I filed somewhere, I think the

1          Court cited in an order something about we've

2          just been informed that was recently when the

3          state department, the defense department, and

4          the other agency said Mr. Hough won't budge,

5          that case is going to have to go forward, that

6          Mr. Pickard had to file the CIPA Act because he

7          believed strongly that the government was going

8          to allow him to go and continue that case and

9          work it and conclude it.  And then it was only

10         when the state department and the other agency

11         who told Mr. Hough won't corporate, he wants to

12         do his case and letters sent to Mr. Pickard

13         that Mr. Pickard had to now provide this notice

14         and tell the state department they can do what

15         they want to, Judge, but he's get an eight-year

16         history or longer of providing information to

17         the government, putting his life on the line.

18         And that's just one of his examples he

19         testified to.  And it's only from

20         inter-governmental squabbling that he's not out

21         there finishing that Afghanistan investigation.

22         So now he intends to offer it.

23                  THE COURT:  I would assume that these

24         people that have been supposedly hiring him--

25         they haven't come in here and said anything,

1  have they?  Do you have anything from them that

2  would show this Court that there's anything at

3  all in what you're talking about?

4  　　　　MR. HOUGH:  Judge, we would ask

5  specifically for copies of any documents from

6  any source indicating that our office generally

7  or I personally blocked anything.  As an

8  officer of this Court, I can tell the Court

9  that I have not contacted any agency to block

10  anything.  I can also tell the Court

11  categorically that every information from every

12  agency regarding any alleged cooperation of Mr.

13  Pickard has already been viewed by this Court

14  in camera.  This is fiction.  So assuming this

15  exists, we would ask that it be produced and

16  produced now.

17  　　　　THE COURT:  Well, that's what I'm

18  asking for.

19  　　　　MR. RORK:  And, Judge, my comments

20  about blocking and defense counsel's comments,

21  may be I used street language, I say block.

22  Mr. Corsette called me-- and Mr. Bonner eight

23  days before September 11th, 2001, World Trade

24  Center and said Mr. Pickard's Infrared program

25  and continued investigation has the green

1       light.  However, Mr. Hough, the AUSA in Topeka,

2       wants to proceed with his case first.  Until

3       that burden is overcome we can't work with Mr.

4       Pickard.  Send the documents in.  Then we have

5       September 11th, this is history, and then we

6       have all the activities after that.  I believe

7       there's also-- and I say Mr. Hough blocking it,

8       it's him saying I want to go forward with my

9       prosecution, gentlemen.  Not like, hey, you

10      guys, get the heck out of here.  So maybe if I

11      expressed it in that matter.  The fact that Mr.

12      Hough wanted to continue prosecuting Mr.

13      Pickard here in this case, that's what blocked

14      it.

15                    MR. HOUGH:  Judge, I can tell you

16      categorically I have personally not had a

17      conversation with Corsette or Bonner, wouldn't

18      know them if I saw them.  And I demand that the

19      court demand any documentation supporting these

20      allegations.  It's outrageous.

21                    MR. RORK:  And, Judge, now that

22      he's-- Peter Lou was the other individual who

23      is listed on the document has indicated that

24      the Pickard Afghanistan matter cannot go

25      through with the government continuing.  Now, I

1    don't know if they communicated that to Mr.

2    Hough, that's what they communicated to me.

3    And all Mr. Hough had to do was contact the

4    people who are named here about these documents

5    and say, hey, Pickard's prosecution going

6    forward, they're going to introduce the

7    Infrared material you received, any objections.

8    That's all we're asking for, Judge.

9            THE COURT:  Well, what I'm going to

10   allow you to do-- I have no information at all,

11   no one has furnished me anything about any

12   classified information except what Mr. Pickard

13   says.  That's the only thing only thing I know

14   and I need more than that.  This is a small

15   United States District Court in Topeka, Kansas.

16   I'm not fighting the Afghanistan battle or I'm

17   not dealing with all those things.  And I'm

18   going to allow you folks to go ahead and

19   present anything you want to present, just go

20   right ahead and do it.  If anyone stops us why

21   we'll see what-- we'll see what happens.  But

22   I'm not going to delay this case for another

23   year while the government does the discovery

24   based on what your client says and I'm not

25   going to be able to do that.  I have a

1    responsibility to try-- get this case tried and

2    get it behind us. It involves a LSD plant out

3    at Wamego, Kansas and it does not have all of

4    the great earthshaking ramifications that might

5    take place. So I'm going to allow you to go

6    ahead. We're going to stop all of this

7    information and we're going to go ahead and try

8    this case. So just set yourself to it.

9            MR. RORK: And, Judge, that's-- we

10   appreciate that because we're ready to start

11   January 13th. We want to. Mr. Pickard doesn't

12   want to get in trouble for introducing those

13   documents on the eve of trial, that's all.

14   We're ready.

15           THE COURT: Well, that's what's going

16   to happen. All right.

17           MR. HOUGH: Judge, for clarification,

18   we would-- before the Court specifically rules

19   that the defendant may introduce all of this

20   Infrared document and his allegations of

21   potential relevance to this case.

22           THE COURT: Well, I'm going to look

23   those again.

24           MR. HOUGH: Please, that's what we're

25   asking.

1          THE COURT:  I understand that.  But

2     I'm-- we've ruled once on this that we would

3     allow them to go ahead.  And if you want to

4     make any further argument about that, you can.

5          MR. HOUGH:  Judge, we would ask that

6     Mr. Rork provide us with copies of-- or a copy

7     of the mailing list post February 2002 of these

8     32 individuals at these 32 agencies.  Because

9     assuming the Court is going to allow at trial

10    this alleged Infrared thing, the alleged St.

11    Petersburg thing, his alleged involvement in

12    the Marquardt phentynl thing and we'd ask the

13    Court, as the Court considers that, to bear in

14    mind the information provided by the government

15    in camera previously.  I mean, we've shown the

16    Court the files of all the investigative

17    agencies identified at that time.

18          THE COURT:  And they've all never

19    heard of Mr. Pickard.

20          MR. HOUGH:  Exactly.  So for the

21    Court to say, okay, I'm going to let you

22    introduce evidence of this, in light of that we

23    would respectfully submit that should not be

24    done.  But in the even that you do then our

25    rebuttal case is going to be the 32 people on

1    that mailing list on Infrared and then whoever

2    else he alleges he talked to in the Marquardt

3    thing and whoever else he alleges he talked to

4    in the St. Petersburg thing.  That's our

5    rebuttal case is all of those individuals

6    coming in and saying it didn't happen or it

7    didn't happen in the way they represented it

8    happened and it had nothing to do with an LSD

9    lab in Wamego, Kansas in the year 2000.

10         Well, with the stipulations that the

11   defense offered November 8th I think reasonably

12   this case can be tried in four to six weeks.

13   You can add another week or however long it

14   would take for the government to call and

15   examine 40 or more witnesses in rebuttal in

16   addition to Mr. Pickard's testimony and then

17   the cross examination by Mr. Apperson and Mr.

18   Pickard's counsel.  So as a matter of confusion

19   of the issues, undue waste of time, we would

20   ask the Court to consider this with great

21   caution because we submit respectfully it's

22   unnecessary and would be a huge diversion from

23   the issues that are relevant to the

24   determination of the guilt or innocence of

25   either of these men.

| | |
|---|---|
| 1 | THE COURT:  Well-- |
| 2 | MR. RORK:  Judge, I need to comment |
| 3 | on that. |
| 4 | THE COURT:  Let me just say |
| 5 | unfortunately in spite of what the government |
| 6 | thinks I cannot just strip a man of his |
| 7 | defense.  You understand.  That brings reversal |
| 8 | and makes me try the case several times again. |
| 9 | MR. HOUGH:  Judge, I'm very conscious |
| 10 | of that. |
| 11 | THE COURT:  And I want you to |
| 12 | remember that. |
| 13 | MR. HOUGH:  Yes, sir.  And with all |
| 14 | due respect, judge, in recognition of that |
| 15 | Washington v. Texas was the case that the Court |
| 16 | is talking about.  The cases since Washington |
| 17 | v. Texas have made it very clear every Court to |
| 18 | determine the issue that a defendant is not |
| 19 | entitled to present perjury or support perjury |
| 20 | in presenting that defense.  And in the context |
| 21 | of what they are offering this information for, |
| 22 | that is exactly what it would be. |
| 23 | THE COURT:  Well, I understand that. |
| 24 | Mr. Rork. |
| 25 | MR. RORK:  Judge, all I wanted to |

1       indicate to the Court was, you know, and I

2       understand you reviewed documents, but ask

3       yourself this question, Judge, did you review

4       documents that this government agency seized

5       after November 1, 2000, from Mr. Pickard's

6       records and computer that are exactly what

7       we've given in Infrared?  Did they give you

8       those documents in considering what agencies?

9       They asked about Mr. Pickard being a

10      confidential informant being that and being an

11      agent for the state department.  These

12      documents, Judge, they're in the government's

13      records.  They're in their computer records

14      seized from Mr. Pickard that they haven't ever

15      produced in any discovery they've given to us.

16      They've had to gather these around collaterally

17      in specific discovery requests.  And I recent

18      Mr. Hough interfering that and I know what

19      weight you give it.  Mr. Hough's arguments are

20      for a jury and we're doing this to make the

21      case go longer.  We're doing everything we can

22      to see that Mr. Pickard is entitled to put on

23      the defense that he has.  And these documents

24      we will get Mr. Hough.  If he'd look at Exhibit

25      No. 1 to my motion filed today, which I assume

1    he didn't have time to read, just like I didn't

2    have time to read his response that was faxed

3    as I walked out the door, that's the 32 names.

4    And these documents, Judge, are all from Mr.

5    Pickard's records that's in the government's

6    records that they won't give us-- or haven't

7    given us, I should say.  And they're reproduced

8    from other agencies that gave them to him.  I

9    just wanted to indicate I appreciate the

10   Court's comments and I understand we need to

11   get it tried and we intend to proceed, Judge,

12   and we're ready to go to trial January 13 and

13   get it over.  Mr. Hough can argue to the jury

14   anything that he wants.  And Mr. Pickard will

15   put on any document that are confirmed in the

16   government's own records right now, most of

17   them.

18              MR. HOUGH:  Judge, I would merely

19   note and reiterate for counsel's benefit,

20   shortly after the first appearance in this case

21   we indicated that defense counsel could have

22   access to all the evidence seized.  They need

23   only contact the case agent for a mutually

24   convenient date and time and get that arranged

25   and see that stuff.  Lots and lots of it, as

1    the Court knows from the discovery motions we

2    have renewed that offer as we have in various

3    letters and e-mails to Mr. Bennett and Mr.

4    Rork.  If they want to see any of the stuff

5    that was seized we again make that-- it's an

6    open offer until the 6th of January when we're

7    going to be getting all that stuff in a fashion

8    to be marked and presented to a jury.  We would

9    ask counsel to take advantage of that

10   opportunity before then.  But Agent Nichols or

11   Agent Hanzlik of DEA can make arrangements for

12   that to be viewed at a mutually convenient date

13   and time.

14           THE COURT:  Well, all of these

15   matters are matters that can be submitted to a

16   jury and maybe it is so farfetched that a jury

17   will see through it very quickly.  And, of

18   course, the Court is still having trouble

19   understanding why we're going to give six weeks

20   to a case that involves the highway patrol

21   seizing a rental truck with a LSD lab in it and

22   other chemicals, but I'm having a little

23   trouble seeing that.  But I hope that when we

24   get into this trial that we'll find that all of

25   those novel things are not actually necessary

1        in this case.

2                MR. HOUGH:  Judge, we recognize the

3        Court's position that these matters may be

4        matters presented to a jury and a jury may or

5        may not see through these issues.  But we would

6        respectfully submit that as the case law

7        recognizes the Court exercises what is known as

8        the gatekeeper function and it is that under

9        Rule 403 that we're asking the Court, in this

10       instance, to exercise regarding this based upon

11       what the defendant has developed a record

12       showing the Court about it.

13               THE COURT:  That's what I want to

14       see, I want to see-- and it may very well be

15       that some of these things I say where I told

16       them they could put in what they want to, they

17       may not get to put it in if it's not relevant

18       to the case we're trying.  All right.  Let's

19       leave this emotional argument here and go to

20       something else.  One other thing I see here,

21       Mr. Rork, is you've come in and asked to be

22       appointed-- court appointed to defend this

23       gentleman and you have been his hired attorney

24       for two years now.  Do you want to say anything

25       more about your application to be appointed and

```
 1        what is it you're actually asking for there?
 2              MR. RORK:   Well, Judge, what I'm
 3        asking for is when I entered this case a while
 4        ago it was going to be a simple case and I was
 5        going to be local counsel and people from
 6        California were going to enter their
 7        appearance.  When documents were shared with
 8        the attorneys and the government filed for
 9        sanctions and evidently scared off the one
10        attorney from wanting to practice in the State
11        of Kansas.  Clients that are charged with
12        serious crimes with a life sentence don't have
13        great rapport, that didn't pan out.  Another
14        attorney was going to enter his appearance.  I
15        was under the belief that this would be
16        resolved and if it was, I wasn't going to be
17        trying the case.  And I'm not going to do the
18        Court a disservice and ask to bail out.  Judge,
19        I have worked for over a year-and-a-half for no
20        compensation.  And just so you'll know the
21        record ought to be clear, I was served with a
22        subpoena to appear before a grand jury in
23        California about documents evidencing any
24        relationship with Mr. Pickard that fortunately
25        I've been set now for hearing January 9th.  A
```

1    attorney has been retained out there to file

2    that because I told them you didn't want this

3    trial continued and I don't think you want me

4    out there.  And that's why I put down in my

5    motion what little compensation I had because

6    there's a gag order and there's a motion

7    pending to quash that subpoena.  Even though I

8    wouldn't mind producing for you in camera what

9    remittance compensation I've had to this point.

10   But I don't intend to do so while the

11   California grand jury and the federal judge out

12   there has it under advise to quash.

13        My main concern, Judge, is I represented

14   the sheriff in Shawnee County a few years ago

15   and I can represent only so many people, I

16   don't want to lose my entire practice being

17   here for a long time.  And I have reached that

18   point where, you know, obviously it ain't going

19   to be a plea and I'm firmly committed.  Nobody

20   from California is going to come in and try it

21   and you're not going to continue it, so I'm

22   going to stay on board.  All I wanted was from

23   this point forward, even just trial time,

24   that's all I wanted, number one.

25        Number two, I only wanted-- Mr. Pickard

1    has no money to subpoena witnesses and I know

2    that's a separate matter.  I used some forms

3    that I got from Mr. Bennett back in June or

4    July one of them was or-- no, that was June or

5    July about how to get appointed once you were

6    already stuck.  I think that one was the form I

7    got from him are something in a recent case

8    about-- I don't know somebody declared it

9    complex or something.  In case it does go more

10   than three weeks or so, even if I stipulate, I

11   believe it can be a lot shorter-- and, in fact,

12   I have a stipulation, Mr. Hough, that's signed

13   and I think I have one for Mr. Bennett to sign.

14   That's all I wanted, Judge.  I don't care from

15   now.  When the trial starts, if I can get paid

16   then that's all I'm asking for and money for

17   witnesses under whatever standard I have to

18   provide.

19            MR. HOUGH:  Thank you, Judge.  And

20   after the last hearing, in response to those

21   comments, and counsel's agreement to stipulate

22   to documents, testimony, I prepared a

23   stipulation, I e-mailed it to both counsel.

24   Mr. Rork and Mr. Pickard have signed that and I

25   just gave to it Mr. Bennett and Mr. Apperson

1       for their signature.  And if they will do that,

2       then I'll sign it.  We'll file it with the

3       Court here in open Court and ask that a copy be

4       provided to each of the three of us.  That

5       right there, Judge, will eliminate, I believe,

6       38 witnesses.  So stream lining--

7                THE COURT:  All right.  Well--

8                MR. HOUGH:  -- is happening.

9                THE COURT:  It's my understanding

10      that you're just asking to be appointed from

11      this time forward, is that what you're

12      suggesting?

13               MR. RORK:  All right.  Or from

14      whatever point you say forward.  I don't care.

15               THE COURT:  Well, I think the Court

16      is willing to do that.  I-- this raises some

17      questions.  It raises a question that someone

18      could pick the attorney he wanted and hire him

19      and say that he had-- and I realize that isn't

20      this situation.  But it somewhat changes the

21      appointment of attorneys from the Court to the

22      appointment of attorneys to the clients and

23      that's something, of course, we'd like to

24      avoid.

25               MR. BENNETT:  Judge, if I might just

1       for the Court's edification the assistance that

2       Mr. Rork was making reference to where it

3       occurred with me was in a case where Judge

4       O'Connor made the same-- it was the same type

5       of situation, the client ran out of money and

6       Judge O'Connor went ahead and entered an order.

7       I represented a lady by the name of Christine

8       Dunn.  So there is some precedence in it in

9       this court for that in the District Court of

10      Kansas.

11              THE COURT:  Well, right now I think I

12      will simply appoint you, Mr. Rork, to continue

13      from this time on and-- in regard to represent

14      Mr. Pickard and that is what we'll do.

15              MR. HOUGH:  Judge, before the court

16      closes let me sign this document and ask that

17      it be filed.  And we'd ask, Judge, that each of

18      the three of us get copies of this if I can

19      ever get it paper clipped.

20              THE COURT:  All right.  If you'll

21      give that to Mary Beth she'll see that that

22      happens.  All right.  Now, can anyone think of

23      anything else we need to cover here?  We've-- I

24      think we've outlined pretty well where the

25      Court thinks I'm going to go, so--

1          MR. HOUGH:  Judge, will there be a

2     written order following?

3          THE COURT:  Yes.

4          MR. HOUGH:  Thank you.  We have

5     nothing further.

6          THE COURT:  We will put out a written

7     order.  All right.  I believe that's all we can

8     do then.  Mr. Bailiff, let's recess the Court.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

NORA LYON & ASSOCIATES, INC.
1515 S.W. Topeka Blvd., Topeka, KS  66612
Phone:  (785) 232-2545      FAX:  (785) 232-2720

COPY                                    50

```
 1        UNITED STATES OF AMERICA  )
                                    )   ss:
 2        DISTRICT OF KANSAS        )

 3                    C E R T I F I C A T E

 4             I, Jana L. Willard, Certified Shorthand

 5        Reporter, in and for the State of Kansas, do

 6        hereby certify that I was present at and

 7        reported in machine shorthand the proceedings

 8        had the 17th day of December, 2002, in the

 9        above-mentioned court; that the foregoing

10        transcript is a true, correct, and complete

11        transcript of the requested proceedings.

12             I further certify that I am not attorney

13        for, nor employed by, nor related to any of the

14        parties or attorneys in this action, nor

15        financially interested in the action.

16             IN WITNESS WHEREOF, I have hereunto set

17        my hand and official seal at Topeka, Kansas,

18        this   3 rd   day of  March   2003.

19

20                        Jana L. Willard

21                        Jana L. Willard

22                        Certified Shorthand Reporter

23

24

25
```

NORA LYON & ASSOCIATES, INC.
1515 S.W. Topeka Blvd., Topeka, KS  66612
Phone:  (785) 232-2545      FAX:  (785) 232-2720