COPY

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS
2003 MAR -7 P 1:23
RALPH L. DELOACH
CLERK
By _____ DEPUTY

UNITED STATES OF AMERICA,       )
------------------- Plaintiff,) 
                                )
vs.                             )   Case No.
                                )   00-40104-01/02
WILLIAM L. PICKARD and          )
CLYDE APPERSON,                 )
------------------- Defendants.)


TRANSCRIPT OF CONFERENCE IN CHAMBERS
HAD DURING THE JURY TRIAL
BEFORE
HONORABLE RICHARD D. ROGERS
and a jury of 12
on
March 3, 2003

APPEARANCES:

| | |
|---|---|
| For the Government: | Mr. Gregory G. Hough<br>Assistant U.S. Attorney<br>290 Federal Building<br>444 Quincy Street<br>Topeka, Kansas 66683 |
| For the Defendant:<br>(Pickard) | Mr. William Rork<br>Rork Law Office<br>1321 SW Topeka Blvd.<br>Topeka, Kansas 66603 |
| For the Defendant:<br>(Apperson) | Mr. Mark Bennett<br>Bennett, Hendrix & Moylan<br>5605 SW Barrington Ct. S.<br>Topeka, Kansas 66614 |
| Court Reporter: | Roxana S. Montgomery, CSR<br>Nora Lyon & Associates<br>1515 South Topeka Avenue<br>Topeka, Kansas 66612 |

(THEREUPON, the following proceedings were had in chambers. Present were Mr. Hough, Defendant Pickard, Mr. Rork, Defendant Apperson, Mr. Bennett, Agent Nichols, Mr. Haley, Mr. Prentice, two Court Security Officers, and Court Reporter Montgomery.)

THE COURT: All right, let the record show we're meeting in chambers to discuss a matter, and, Mr. Bennett, would you like to?

MR. BENNETT: Yes, Judge. I have a matter that I thought was delicate enough to ask the Court to take this matter up in chambers. I'd like to ask some questions outside the presence of the jury of Agent Nichols, and then go from there, if I might.

THE COURT: All right, go ahead.

MR. BENNETT: Agent Nichols, you're the same Agent Nichols that has testified in this case and has been Case Agent in the case. Is that correct?

AGENT NICHOLS: Yes, it is.

MR. BENNETT: And, Agent Nichols, were you present during the direct examination and the cross-examination of the government's cooperating source, Gordon Todd Skinner?

```
 1              AGENT NICHOLS:  Yes, I was.
 2              MR. BENNETT:  And during the course
 3   of the direct and cross-examination of Mr.
 4   Skinner, did the government become aware of the
 5   fact that the defense attorneys had requested
 6   or made several requests to look at exhibits
 7   which were relative to Mr. Skinner's testimony,
 8   requested that of the Court's Clerk?
 9              MR. HOUGH:  Well, Judge, we'll object
10   unless there is additional clarification here.
11   I mean, during the course of the testimony of
12   Mr. Skinner, counsel requested many items.
13   Unless there is some designation of what he is
14   talking about with specificity, there is no way
15   the witness could answer the question.
16              MR. BENNETT:  Well, Judge, the
17   question was did the government-- did the
18   government become aware of the defense requests
19   to see a number of exhibits that were with
20   regards to that direct and cross-examination.
21   I don't think that requires a specificity.
22              MR. HOUGH:  Judge, there is no way
23   the witness can adequately answer that question
24   because, during the course of the examination
25   of Mr. Skinner, defense counsel were looking at
```

```
 1      exhibits that had been marked and admitted.
 2      And if the Court will recall, we went back and
 3      forth several times about items that counsel
 4      had had the opportunity to look at in our
 5      office, and either had or had not, or had
 6      looked at them in part but not completely, and
 7      during recesses, they were opening the bags of
 8      items that had been admitted without objection,
 9      subsequently, the Court fielded some
10      objections, and then certain items were further
11      discussed as to objection at that time.  So we
12      don't know if he's asking about those types of
13      items, something outside of that, and there's
14      no way the witness can adequately answer that
15      question.
16                THE COURT:  Well, can you make it
17      more clear so we can understand?  I don't have
18      the slightest idea what we're doing here.
19                MR. BENNETT:  Let me ask it this way,
20      Agent Nichols.  In the course of the cross-
21      examination of-- direct and cross-examination
22      of Gordon Todd Skinner, did the government, to
23      your knowledge, make a request of the Court's
24      Clerk that they be provided or that the
25      government be provided with information
```

1    concerning documents that we were asked to see
2    for the purpose of using in cross-examination?
3         AGENT NICHOLS: I'm not sure I
4    understand your question. Are you asking me
5    did the government make a request to see items
6    that were already admitted into evidence by the
7    government that you wanted see?
8         MR. BENNETT: Yes, that we requested
9    that either-- that the defense requested during
10   the cross-examination, we want to see exhibit
11   210 or 315 or whatever it was, and then was the
12   request made that every time we asked to see an
13   exhibit that the government be advised of what
14   exhibit it was.
15        AGENT NICHOLS: Well, no. That's not
16   my understanding, that the government was
17   advised of every exhibit you looked at. My
18   understanding was that you were allowed to go
19   up and look at the exhibits that had been
20   admitted to the Court, and there was not a
21   restraint on you looking at those exhibits, if
22   that answers your question.
23        MR. BENNETT: Well, my question goes
24   one step beyond that, and was there a request
25   made by the government that whenever we asked

1   to look at an exhibit during that examination
2   or cross-examination, that the government then
3   be advised what exhibit we were asking to see
4   or to look at?
5       AGENT NICHOLS:  Not to the best of my
6   knowledge, no.
7       MR. BENNETT:  Did you-- were you
8   directed by the government, by the prosecutor,
9   at any time during this cross-examination to
10  take-- or were you provided with the exhibit
11  numbers that we requested to look at, and were
12  you then directed by the government to discuss
13  and assist the informant in formulating
14  questions-- or answers to questions with
15  regards to those exhibits?
16      AGENT NICHOLS:  No.
17      MR. BENNETT:  Did you at any time
18  voice any concern to Mr. Hough or anyone else
19  that you felt that the procedure that was being
20  followed so far as the prepping the witness
21  with regards to any exhibits was improper?
22      AGENT NICHOLS:  For prepping Mr.
23  Skinner?
24      MR. BENNETT:  Yeah.
25      AGENT NICHOLS:  I don't believe so.

1   I mean-- I'm not quite sure of your question,
2   but I don't believe so, no.
3           MR. BENNETT:  Well, I want to make
4   sure you understand the question, because my
5   question really is:  Do you-- did you at any
6   time-- strike that.  Were you at any time
7   involved in obtaining identification of the
8   exhibits that the defense was interested in
9   with regards to the cross-examination of Mr.
10  Skinner, and then voiced concerns about the
11  manner in which that information was being
12  obtained and used by the government.
13          MR. HOUGH:  Well, Judge, that assumes
14  facts not in evidence at all, based upon the
15  witness's prior answers.  It assumes-- it
16  assumes facts contrary to what the witness has
17  already answered.
18          MR. BENNETT:  Judge, this information
19  came to me from Mr. Skinner's attorney, and
20  that's the reason that I'm making these--
21  asking these questions, and I would make a
22  proffer that this is the reason for the
23  questions.  Mr. Wurtz has advised me that his
24  client has advised him that this occurred.
25          MR. HALEY:  That what occurred?

1   MR. BENNETT: Mr. Wurtz has advised
2   me that his client has advised him that during
3   the cross-examination-- direct and cross-
4   examination of Mr. Skinner, that the government
5   approached the Court's Clerk and asked them if
6   any time we expressed an interest in some
7   exhibit that related to Mr. Skinner's
8   testimony, that they wanted to be advised of
9   what the exhibit was or exhibits were that we
10  were expressing interest in, and that then Mr.
11  Hough indicated to Mr. Nichols that he wanted
12  him to discuss those exhibits, exhibit or
13  exhibits, with Mr. Skinner and prepare him for
14  further cross-examination with regard to those
15  exhibits.
16  MR. HOUGH: Judge, I don't recall
17  having that conversation with Agent Nichols or
18  with Skinner.
19  MR. BENNETT: Well, I'm just making
20  the proffer, Judge, and the-- and I'd cite a
21  couple of cases. The one's United States
22  versus King, 724 F.2d 253, which provides that
23  the case should be remanded to determine if a
24  recording device had been planted to pick up
25  conversations between the defendant and his

1  lawyer, who had--
2          THE COURT:  Well, of course, that
3  would be the law.  Go ahead.
4          MR. BENNETT:  Well, Judge--
5          THE COURT:  A recording device?  Are
6  you saying a recording device was--
7          MR. BENNETT:  Judge--
8          THE COURT:  Go ahead.
9          MR. BENNETT:  No, sir, I'm not saying
10 that a recording device was involved.  I'm
11 saying this had the same effect as a recording
12 device, the using of the -- what I contend,
13 based on what I have been told, the use of the
14 Court's Clerk to provide that information.  And
15 I'm not fault-- don't misunderstand me-- I'm
16 not faulting Mary Beth.  I'm not suggesting
17 that she did anything improper or that there's
18 anything wrong so far as what happened from the
19 Court's standpoint.  My suggestion is, and my
20 position is, that if this happened-- and I
21 acknowledge Mr. Nichols has denied that it
22 happened now-- but if it happened, then it's
23 improper, in my view, based on my reading of
24 the case law, and for that reason, I wanted to
25 bring it up and--

```
 1              THE COURT:  Now you're talking about
 2    the Federal Public Defender Wurtz?  Is that who
 3    you're talking about?
 4              MR. BENNETT:  Ron, yes, sir.
 5              THE COURT:  Ron Wurtz, and you're
 6    saying that he said he talked to Skinner.
 7              MR. BENNETT:  Yes, sir.
 8              THE COURT:  And Skinner said this
 9    happened?
10              MR. BENNETT:  Yes, sir.
11              THE COURT:  I see.
12              MR. RORK:  Can I ask him one
13    question, Judge?  I wasn't a witness to the
14    conversation.  Did he say it was just Skinner,
15    or did he say it was other witnesses?
16              MR. BENNETT:  Well, he said that it
17    occurred -- according to Mr. Wurtz, that it
18    occurred with regards to not only this witness,
19    Mr. Skinner, but with the witness Guinan, and
20    the witness Savinelli, and the witness Hobbs.
21              THE COURT:  Now, tell me again what
22    happened.
23              MR. BENNETT:  Well, during the course
24    of the direct and the cross-examination of
25    these witnesses, a request was made of the
```

1   Court's Clerk that if we, we being the defense,
2   wanted to see or requested to be provided with
3   an exhibit or access to an exhibit or a copy of
4   an exhibit that these witnesses presented
5   testimony with regards to, that then the
6   government wanted to know-- wanted to have that
7   information provided to them and that then the
8   government, when the opportunity presented
9   itself during breaks, lunch breaks, or breaks
10  in the afternoon, morning, whatever, that Mr.
11  Nichols was then directed to discuss with those
12  witnesses those exhibits and the questions that
13  might be presented to the witness.
14          THE COURT:  Now, these were exhibits
15  that had already been admitted into evidence?
16          MR. BENNETT:  Yes, sir.
17          THE COURT:  You had the right to look
18  at them any time you wanted to without asking a
19  clerk or anyone else.
20          MR. BENNETT:  Well, yes, Judge they
21  were admitted, and we had the right, but the
22  practice that we have been-- everybody, I
23  think, has been following is to say to Mary
24  Beth, "I need to see Exhibit 715.  Can you get
25  it out of the big pile or box for us," and

1    that's what was taking place.
2            THE COURT:  Now, the minute she would
3    show that to you, I assume everyone in the
4    courtroom would know that you had that exhibit,
5    wouldn't they?
6            MR. BENNETT:  Well, I don't believe
7    so, Judge, because the way it was working out
8    there is on a break or we'd go up and say we
9    need to see Exhibit 715 if we were going to use
10   it for further examination.  It would be
11   provided to us, and then as I understand it
12   from what Mr. Wurtz told me, that information
13   would also-- Mr. Hough would find, ask, or seek
14   to find out what exhibit did Bennett or Rork
15   ask for, and then there would be-- this is the
16   way it's explained to me by Mr. Wurtz.
17           MR. HOUGH:  Judge, at no time did I
18   or anyone at my direction participate in
19   programming a witness, period.  During the
20   course of the trial at some point, Mary Beth
21   handed copies of documents to defense counsel.
22           THE COURT:  Well, to both of you.  I
23   saw her do it all the time.  She'd dig in there
24   and get those things.
25           MR. HOUGH:  And there was at least

```
 1       one occasion when after a recess Mary Beth came
 2       back and handed copies of documents to defense
 3       counsel, and I asked her, "Well, what is that,"
 4       and she said, "Well, they asked for copying of
 5       those.  Would you like one too," and I said,
 6       "Well, either that, or let me know what they
 7       are," and that was the extent of that, and it
 8       was not done for any devious purpose, and I did
 9       not direct agents or-- and I did not
10       participate in sitting down with witnesses
11       saying, "You're going to be shown these
12       exhibits, and you should answer X, Y, and Z."
13       That hasn't happened.  That's fiction.  As it
14       relates to, you know, sitting down in a
15       pretrial conference with witnesses, any of them
16       that I sat down with, certainly, I would have
17       said, "Cross-examination is probably going to
18       go here, here, here, and here," and then at
19       recesses, I mean, done the same thing but, I
20       mean, I don't know anybody that doesn't do
21       that, and it certainly was not as a result of
22       anything other than my own instincts from
23       listening to the testimony.
24                MR. BENNETT:  Judge, I want to just
25       clarify one thing.  I'm not suggesting, or I
```

```
 1      don't mean to suggest that Mr. Hough told
 2      anybody what the answer ought to be to the
 3      question on cross-examination, and if that's
 4      the impression I left, that's not the
 5      impression I meant to leave.  My concern is
 6      that once they knew, if they knew, what
 7      exhibits we were interested in, that then that
 8      gave them an opportunity to specifically sit
 9      down and cover those issues, and I don't know
10      what went on in the meetings, but that there
11      was some assistance given to the juror-- or not
12      to the juror-- to the witness as to how he
13      could or should respond.
14              THE COURT:  Well, what are you asking
15      me to do now?
16              MR. BENNETT:  Well, Judge, my-- based
17      on my proffer, I'm asking the Court to declare
18      a mistrial on the basis of misconduct.
19              AGENT NICHOLS:  Your Honor, can I
20      make a comment here on some of this?
21              THE COURT:  Yes, you may.
22              AGENT NICHOLS:  There have been a
23      number of times where I have gone up to the
24      exhibits, and I have looked at the exhibits,
25      and that reason was primarily in response for
```

1      questions I had with my power point
2      presentation in putting that power point
3      presentation together.  I needed to review some
4      of the items that were in evidence, and I
5      hadn't-- didn't have a copy of those exhibits,
6      so I needed to go back and look at those
7      exhibits to clarify in my mind, to clarify the
8      slide that I was preparing.  So there are a
9      number of occasions where I was looking at
10     evidence, but in no way was I looking at that
11     evidence for preparation of a witness.  The
12     preparation of the witness was-- witnesses was
13     based on their statements to us, the reports
14     that were written to us, and then whatever--
15             MR. HOUGH:  And there's nothing
16     unusual about that.  It seems like very likely
17     Skinner fundamentally misunderstood what
18     occurred, or he misperceived what had happened,
19     and then communicated that to Mr. Wurtz, but
20     unequivocally, I didn't participate in anything
21     like Mr. Bennett has described, and Mary Beth
22     did nothing inappropriate whatsoever.
23             MR. BENNETT:  Well, and I'm not
24     suggesting that she did, Judge.
25             THE COURT:  Well, if you're asking me

1  to declare a mistrial for what you have just
2  told me, I'm going to overrule and deny the
3  mistrial, and we will proceed with the case.

NORA LYON & ASSOCIATES, INC.
1515 S.W. Topeka Blvd., Topeka, KS  66612
Phone: (785) 232-2545      FAX: (785) 232-2720

```
1       UNITED STATES OF AMERICA    )
                                    )   ss:
2       DISTRICT OF KANSAS          )

3

4                    C E R T I F I C A T E

5           I, Roxana S. Montgomery Certified

6       Shorthand Reporter in and for the State of

7       Kansas, do hereby certify that I was present at

8       and reported in machine shorthand the

9       proceedings had the 3rd day of March, 2003, in

10      the above-mentioned court; that the foregoing

11      transcript is a true, correct, and complete

12      transcript of the requested proceedings.

13          I further certify that I am not attorney

14      for, nor employed by, nor related to any of the

15      parties or attorneys in this action, nor

16      financially interested in the action.

17          IN WITNESS WHEREOF, I have hereunto set

18      my hand and official seal at Topeka, Kansas,

19      this _____5th_____ day of ____March____, 2003.

20

21          _____Roxana S. Montgomery_____

22          Roxana S. Montgomery

23          Certified Shorthand Reporter

24

25
```