IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    )<br>        Plaintiff,    )<br>vs.    )    Case No. 00-40104-01/02-RDR<br>    )<br>WILLIAM LEONARD PICKARD    )<br>and CLYDE APPERSON,    )<br>    )<br>        Defendants.    )<br>_____) | |

## MEMORANDUM AND ORDER

This matter is presently before the court upon defendant Pickard's renewed motion to suppress.[1] In this motion, he contends that "newly discovered evidence" requires the court to reconsider its ruling of March 27, 2002. The new evidence comes in the form of testimony of Gordon Todd Skinner offered to the court in a hearing outside the presence of the jury during the course of the defendant's trial.[2] Additional evidence was also offered to the

---

[1] Although defendant Apperson joined in this motion during hearings, the court believes that he has offered nothing to counter the following findings made in the court's prior order:
> There is no proof in the record that defendant Apperson had a subjective expectation of privacy in the premises in question. Defendant Apperson does not allege that any of the items stored on the premises belonged to him. He does not assert that he spent any time on the premises prior to the events of early November 2001. No indicia of ownership or control have been demonstrated. We also find no grounds which would lead a reasonable person to believe that defendant Apperson had a legitimate expectation of privacy at the decommissioned missile site.

Accordingly, the court shall deny this motion as it concerns defendant Apperson.

[2] The defendant has also suggested that the court should consider the testimony he offered during trial in deciding the

court on March 31, 2003. At the conclusion of the hearing on March 31, 2003, the court denied the instant motion. The purpose of this memorandum and order is to memorialize and explain the court's decision.

On March 5, 2003 Pickard informed the court that he wanted to renew his prior motion to suppress. He asserted that he had recently discovered some new evidence on the issues raised in that motion. He asserted that the new evidence came from Gordon Todd Skinner, the government's key witness in this case. Skinner had concluded his ten days of testimony on February 12, 2003. The court scheduled a hearing for March 6, 2003. Following the hearing, the court directed the parties to file briefs concerning the new evidence. Pickard and the government submitted briefs to the court.

During the trial, Pickard testified in his own behalf. He provided the following testimony concerning the suppression issues: (1) he had visited the missile base in Wamego on several occasions and left personal belongings there; (2) he had authority around the base and the right to exclude others from the base because Graham Kendall, the trustee of the trust that owned the base, had given him a power of attorney; (3) he had the key and access codes to the base; (4) he had directed Skinner not to engage in any illegal

---

instant motion. The court will address this testimony during the course of this opinion.

activities at the base; and (5) he also told Skinner not to consent to a search of the base by law enforcement officers. On March 31, 2003, following the conclusion of the trial, Pickard indicated that he had even more evidence to offer on the issues of suppression. He proffered more evidence from Skinner on the suppression issues.

The court must first determine whether it is appropriate to reopen the suppression hearing in light of the "new" evidence. The decision whether to reopen a suppression hearing lies within the discretion of the court. United States v. Quiroz-Carrasco, 565 F.2d 1328, 1330 (5th Cir. 1978). In making this determination, the court should consider whether the moving party has produced newly discovered evidence that was unknown to the party, and could not through due diligence reasonably have been discovered by that party, at the time of the original hearing. See Anthony v. United States, 667 F.2d 870, 875 (10th Cir. 1981); see also United States v. Gonzalez, 182 F.3d 933, 1999 WL 38114 (10th Cir. 1999) (table case) (suppression hearing should not be reopened to consider testimony of cab driver who testified at trial when he was available to testify at suppression hearing); United States v. Childress, 721 F.2d 1148, 1151 (8th Cir. 1982) (district court properly denied motion to reopen suppression hearing where defendant waived his right to testify at suppression hearing and had not established good cause to obtain relief from waiver).

Both witnesses who have now offered evidence were available to

testify at the initial suppression hearing. The defendant has not suggested that Skinner could not have been called to testify at the initial hearing. In addition, there was absolutely no reason why the defendant could not have presented the testimony that he offered at trial at the suppression hearing. In light of these circumstances, the court does not believe that it is appropriate to reopen the suppression hearing. However, even if we did so, we would continue to deny the defendant's motion to suppress for the following reasons.

In the order of March 27, 2002, the court determined that (1) Gordon Todd Skinner had authority to consent to a search of the missile base; (2) Skinner voluntarily consented to a search of the missile base by law enforcement agents on October 27, 2000; and (3) defendants lacked standing to challenge the search because they did not have an objective expectation of privacy inside the underground base. The court also found that the seizure of items from the search executed pursuant to the search warrant need not be suppressed because (1) probable cause existed to support the issuance of the search warrant; (2) none of the alleged omissions in the affidavit for the search warrant alter the probable cause determination; and (3) the search warrant did not violate the particularity requirements. Finally, the court determined that the government had met the requirements for the issuance of a warrant authorizing video surveillance.

Pickard suggests initially that Skinner did not have authority to consent to a search of the missile base property. In his motion, he argues: "Agents in this case were unreasonable in their belief that Skinner, the confidential source, had apparent authority to invite them onto the property. Agents were unlawfully on the property during their 'tour' where they posed as 'potential buyers' and all information gained therefrom was obtained illegally." This argument is apparently based on the belief that the agents improperly posed as buyers for the base in representations to Kendall and that trust documentation may have shown some interest by Pickard. The defendant next suggests that he had a legitimate expectation of privacy in the missile base. This is based upon a view of the evidence that Pickard (1) "had the authority to exclude others from the property," (2) had stayed at the property on several occasions after he was granted power of attorney; (3) had keys and pass-codes to the property; and (4) kept some of his personal belongings there. Finally, the defendant has suggested that the affidavit in support of the search warrant was defective because it contained omissions of material information, misstatement of facts, and false statements. This argument is apparently based upon the following statements which the defendant contends are contrary to those contained in the affidavit in support of the search warrant: (1) agents directed Skinner to place certain items in open view for the "tour" on October 27,

5

2000, and (2) agents opened containers on the base while on the "tour."

In the court's earlier order, we set forth the law and the facts concerning consent as follows:

> Consent is a well-recognized exception to the warrant requirement of the Fourth Amendment. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). The government has the burden to establish that Skinner consented and had the authority to consent to the tour and searches of the decommissioned missile silo site. U.S. v. Rith, 164 F.3d 1323, 1329 (10th Cir.) cert. denied, 528 U.S. 827 (1999). The government's proof must demonstrate that Skinner had use of the property as someone with joint access and control for most purposes. Id., quoting United States v. Matlock, 415 U.S. 164, 172 n. 7 (1974). While the evidence in this case demonstrates that title to the missile site was not in Skinner's name, he clearly had access and control over the property whether as the owner or as someone with permission from the owner. He had the keys and the access codes to the buildings on the property, and he had free rein to come and go.

The court is not persuaded that any of the evidence offered by the defendant counters the aforementioned findings. The court believes that the credible evidence in the record fully supports these findings. The testimony offered by Skinner did nothing to challenge any of these conclusions. Accordingly, the court does not find it necessary to reconsider its prior rulings on consent.

Any suggestion by the defendant that Skinner's statements to the trustee of the property that the agents were buyers does not invalidate the court's earlier findings. Skinner's motives in making these statements are inconsequential to the ultimate conclusion. The facts fully support that Skinner had authority to

6

consent to a search of the missile base premises and the property that was there.

The defendant has asserted that the officers failed to fully explore the trust documents to determine if Skinner had authority over the missile base. We must disagree. There has been no showing that the trust documents demonstrate anything different than what the court has found. Skinner made no representations that the trust documents suggested that he lacked authority to consent to a search of the premises.

The defendant has again argued that he had an expectation of privacy that allowed him to challenge the searches at the missile base. In the prior order, the court made the following findings concerning this issue:

> Defendants have the burden of establishing that their right to privacy was violated. Rakas v. Illinois, 439 U.S. 128, 130 n. 1 (1978). Otherwise, there can be no Fourth Amendment violation which justifies suppression of evidence. Defendants must prove that they had a subjective expectation of privacy in the searched premises and that society is prepared to recognize that expectation as legitimate. Minnesota v. Carter, 525 U.S. 83 (1998); U.S. v. Gordon, 168 F.3d 1222, 1226 (10th Cir.) cert. denied, 527 U.S. 1030 (1999). The burden is heightened in cases such as the one at bar where the missile site was not a dwelling for defendants but a place to store business property. See Gordon, 168 F.3d at 1226.
>
> . . . . .
>
> There is . . . an insufficient basis to find that defendant Pickard had a legitimate expectation of privacy which was violated by the tour and the searches. There is no evidence that defendant Pickard had an ownership interest in the land or buildings. There is no evidence that defendant Pickard often visited or occupied the

7

location. He appeared to exercise no control over who did occupy the premises or who had access to the property stored there. He was not in possession of the keys or access codes to the buildings when he first arrived in November 2000. Indeed, at one point, he purchased bolt cutters and used them to gain access to the missile silo. Defendant Pickard had a one-sentence document granting him power of attorney which was apparently drafted so that he could exercise some authority over the property in case something happened to Skinner. There is no evidence that this document was ever employed by defendant Pickard. We do not believe either defendant Pickard or a reasonable representative of society would consider the power of attorney sufficient to justify an expectation of privacy at the missile site.

Pickard may have had some records and other property stored at the missile site. But, this was done by Skinner, not by Pickard or at Pickard's bidding. Pickard has not claimed an ownership interest in the missile site or outbuildings. Nor does this appear to be the kind of bailment situation which would produce a legitimate expectation of privacy. There is no evidence that defendant Pickard arranged for the property to be stored at the Wamego missile site as opposed to the Salina missile site or that the property was stored there with any formal or informal understanding limiting who had access to the property.

In sum, certainly there was no privacy interest which was violated during the tour where no boxes or containers were disturbed. In addition, we cannot find a legitimate expectation of privacy in general because there is no evidence that defendant Pickard arranged for the private storage of the property at the Wamego missile site, only that he arranged to receive a vague power of attorney for the site.

Nor was there a legitimate expectation of privacy sufficient to support a challenge against the nonverbal video surveillance. The surveillance being challenged occurred inside the underground missile base. According to the testimony of Agent Nichols, Skinner was inside the base with Pickard or Apperson, whenever they were inside the base. Tr. 183. Skinner was aware of and consented to the video surveillance. The base was not a temporary or permanent residence for either defendant at the time of the surveillance. As already discussed, defendants had very little connection with the property in the months immediately prior to November 2000. Their history or experience on the land before then is not plainly

established in the record. In November 2000, defendants were only visiting the base for the purpose of evacuating equipment and other materials. They had hotel rooms in Manhattan, Kansas where they stayed overnight. Given all of these circumstances, we find that defendants did not have an objective expectation of privacy inside the underground base when Skinner was present. See U.S. v. Nerber, 222 F.3d 597 (9th Cir. 2000) (defendants had no reasonable expectation of being free of video surveillance in hotel room rented by government agents when informants, who consented to the surveillance, were in the room).

The court did not find the testimony of the defendant credible on the facts concerning his expectation of privacy at the missile base. In fact, the court found the testimony offered by Pickard on these matters was a complete fabrication. The testimony was at odds with the vast majority of the evidence presented to the court. Moreover, outside of some corroboration provided in the proffer made by Pickard on March 31, 2003 concerning some additional testimony from Skinner, there was nothing to support his testimony. The proffer provided by the defendant on March 31, 2003 is indeed curious. The proffer consisted of two unsigned affidavits from Skinner. Defense counsel represented that Skinner agreed with the contents of the affidavits. However, some of the information contained in those affidavits is directly in conflict with evidence that Skinner offered previously at trial and with testimony that he offered during the hearing on March 6, 2003. The court does not find any of the information contained in these affidavits credible. Moreover, the court does not find that the testimony of Skinner on March 6, 2003 obligates reconsideration of any of these findings.

At that time, he offered nothing to suggest that any of these were incorrect. In fact, he reaffirmed several of the findings made by the court.

The defendant has again noted the power of attorney document in support of his expectation of privacy argument. Once again, the court is not persuaded that this document shows any expectation of privacy for Pickard. There has been no credible evidence that Pickard ever employed this document to exercise any control over the base.

The court also finds nothing to support the contention that the trust documents might provide some support for the defendant's position. The defendant has the burden of proving standing. The defendant has not offered any credible evidence to support his contention that the trust documents might provide some basis for this theory. At the hearing on March 6, 2003, Skinner did not testify that Pickard had any interest other than the power of attorney. Skinner did testify that the agents left some of the trust documents at the base, but he did not indicate that any of them would have supported the idea that Pickard had any expectation of privacy at the base or that Skinner did not have authority to consent to a search of the base.

The defendant also argues that the search warrant contained omissions of material information, misstatement of facts, and false statements. The court previously considered this argument in its

prior order. There has been nothing presented that causes the court to reconsider its prior ruling.

The court finds no evidence to support the contention that law enforcement officers sought to manipulate the placement of the can of ergotamine tartrate(ET).³ Skinner testified directly that no specific instructions were given to him concerning the placement of the can. Nevertheless, the court is lost as to the legal significance of this fact even if it were true. The evidence has sufficiently demonstrated that Skinner had control over the missile base and the personal property located there, including the ET. No one else has claimed any ownership in the personal property. During the matters leading to the search warrant, Skinner was voluntarily complying with all requests made by law enforcement. Accordingly, even if he were directed to place the can in a place where it could be seen, the defendant's Fourth Amendment rights were not violated.

The defendant has also suggested, based upon the testimony of Skinner and his subsequent affidavits, that the affidavit provided to the magistrate contained false statements. This contention appears to be based upon Skinner's testimony that Agent Karl Nichols, a DEA special agent and former DEA forensic chemist,

---

³ The court shall refer to the substance contained in the can as ET because, at the time of the search warrant, all parties believed that is what was in the can. Subsequently, it was discovered, however, that the substance was actually ergocrystine.

11

opened the can of ET and placed his finger in it on October 27, 2000. This statement was contrary to the statements made by Agent Nichols in the affidavits in support of the search warrant and his testimony during the trial and the instant hearing. The court does not find the testimony of Skinner on this issue credible. The court does not believe that a trained DEA chemist would subject himself to possible convulsions by opening such a dangerous can of chemicals. The court also notes that Skinner testified that the events of October 27, 2000 were very stressful to him. The stress of the situation may have affected his ability to remember accurately what occurred. In sum, the court does not find factual support for this particular aspect of the defendant's motion. Moreover, the court fails to find any other support for the position that law enforcement agents provided false or misleading information to the magistrate in the affidavits in support of the search warrants.

The defendant has also suggested that the government has somehow confused the issue of his standing to object to the searches that occurred at the missile base. This argument is apparently based upon the contention that law enforcement officers failed to adequately examine, consider and retain the trust documents concerning ownership of the missile base. Again, there has been no credible evidence produced that supports the position that the trust documents provided any interest for Pickard.

12

In sum, the court finds no basis to reconsider its earlier order. The defendant's renewed motion to suppress shall be denied.

**IT IS THEREFORE ORDERED** that defendant's renewed motion to suppress (Doc. # 297) be hereby denied.

**IT IS SO ORDERED.**

Dated this 4th day of April, 2003 at Topeka, Kansas.

_____
United States District Judge