Page 2

**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT**

**SENTENCE BY A PERSON IN FEDERAL CUSTODY**

FILED

JAN - 7 2008

Clerk, U.S. District Court

By: _____ Deputy Clerk

| United States District Court | District KANSAS (TOPEKA) |
|---|---|
| Name (under which you were convicted):<br><br>   William Leonard Pickard | Docket or Case No.:<br><br>   00-cr 40104-RDR-01 |
| Place of Confinement:<br><br>   FCI-Victorville, Adelanto, CA 92301 | Prisoner No.:<br><br>   82687-011 |
| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) |
| USA                     v. | William L. Pickard |

### MOTION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging: _____

    _____ US District Court-Kansas

    _____ 444 SE Quincy

    _____ Topeka, KS 66683           The Honorable Richard D. Rogers

    (b) Criminal docket or case number (if you know): 00-CR-40104-RDR-01

2.  (a) Date of the judgment of conviction (if you know): 03-31-03 _____

    _____

    (b) Date of sentencing: November 20, 24, 25, 2003

3.  Length of sentence: 2cts. life imprisonment to be served concurrent

4.  Nature of crime (all counts): Ct 1: Conspiracy to distribute LSD in violation

    of 21 USC 846   Ct 2: Possession with intent to distribute LSD in

    violation of 21 USC 841(a)(1)

    _____

    _____

    _____

5.  (a) What was your plea? (Check one)

    (1)  Not guilty ☒       (2)  Guilty ☐       (3)  Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count

    or indictment, what did you plead guilty to and what did you plead not guilty to? _____ N/A

    _____

    _____

    _____

    _____

6.  If you went to trial, what kind of trial did you have? (Check one)      Jury ☒      Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes ☒   No ☐

8. Did you appeal from the judgment of conviction?   Yes ☒   No ☐

9. If you did appeal, answer the following:

   (a) Name of court: US Court of Appeals - Tenth Circuit

   (b) Docket or case number (if you know): 03-3369

   (c) Result: Affirmed

   (d) Date of result (if you know): March 28, 2006

   (e) Citation to the case (if you know): USA v. Pickard, 441 F.3d 1162 (10th Cir. 2006)

   (f) Grounds raised: Violation of STA; denial of motion to suppress including traffic stop, search warrant and nonverbal communications. Second Superseding Indictment challenge; judicial misconduct, violation of discovery requests; overruling evidentiary objections and failure to admit testimony; denial of calling witnesses; refusing immunity to witnesses; refusing to continue for presence of witnesses; failure to submit instructions on apparent authority and and denial of time for closing; prosecutor misconduct; acquittal; CIPA PT Conf. motion in limine error; cumm. error; sentencing error; quantity denial;

   (g) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☒   No ☐

   If "Yes," answer the following:

   (1) Docket or case number (if you know): 06-8148

   (2) Result: Petition for writ of certiorari denied

   (3) Date of result (if you know): January 8, 2007

   (4) Citation to the case (if you know): Pickard v. US, 127 S.Ct. 1024, 166 L.Ed 2d 771, (2007)

   (5) Grounds raised: Whether defendant had fair trial under 5th Amend. when requested jury instruction on public authority, entrapment by estoppel no given after substantial evidence provided; Did Pickard have reasonable expectation of privacy in missile base under 4th Amend.; Whether there was a Statutory speedy trial violation where court did not set forth reasons for ends of justice continuance?

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

    Yes ☒   No ☐

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: US Ct. of Appeals - Tenth Circuit

    (2) Docket or case number (if you know): 03-3369

    (3) Date of filing (if you know): January 5, 2005

Page 4

(4) Nature of the proceeding: motion to remand for new trial - Brady violations

(5) Grounds raised: _Government's suppression of Brady material with regard to
confidential informant narcotics violations and investigations of his

_criminal activity prior to trial, during, and after; testimony by agents
denying such information exists; failure to comply with discovery orders.

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or

application?    Yes ❑ No X❑

(7) Result: Motion sent to panel for ruling; no ruling issued and later denied as
moot by 10th Cir. in direct appeal opinion, indicating district ct. did not

(8) Date of result (if you know): March 28, 2006 _____ suggest it would

(b) If you filed any second motion, petition, or application, give the same information: grant a new trial.

(1) Name of court: _10th Circuit Court of Appeals

(2) Docket or case number (if you know): 03-3369

(3) Date of filing (if you know): April 30, 2005

(4) Nature of the proceeding: _2nd Supplemental motion in support of remand - Brady

(5) Grounds raised: failure of Government to provide defense with evidence of

_investigation of witnesses for narcotics involvement several years prior to
filing of Indictment here; failure to provide requested discovery and

_government suppression of discovery; new evidence Skinner was manufacturer
of LSD in support of Pickard's defense.

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or

application?    Yes ❑ No ☒

(7) Result: Issue referred to panel for ruling; no ruling thereon; denied as moot

(8) Date of result (if you know): March 28, 2006 _____ See above.

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your

motion, petition, or application?

(1)  First petition:       Yes ❑    No X❑

(2)  Second petition:    Yes ❑    No X❑

Page 5

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: The 10th Circuit informed motions were sent to panel for ruling;Proc. request within motion for partial remand to district court was requested; no ruling on motion was made until decision issued in direct appeal indicating motion moot because District Court did not certify its intent to grant new trial; No finalorder ever issued; 10th Cir. Clerk indicated panel would be ruling

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

GROUND ONE:   See Attached.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
   See Attached

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒   No ☐

(2) If you did not raise this issue in your direct appeal, explain why: N/A

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed: N/A

Docket or case number (if you know): _____N/A_____

Date of the court's decision: _____N/A_____

Result (attach a copy of the court's opinion or order, if available): _N/A_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

   Yes ❑   No ❑   N/A

(4) Did you appeal from the denial of your motion, petition, or application?

   Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?   N/A

   Yes ❑   No ❑   N/A

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _N/A_____

_____

Docket or case number (if you know): ____N/A_____

Date of the court's decision: _____N/A_____

Result (attach a copy of the court's opinion or order, if available): ___N/A_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or

raise this issue: _N/A_____

_____

_____

_____

_____


**GROUND TWO**: _See Attached._____

_____

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

   See Attached._____

_____

_____

_____

_____

_____

_____

_____

**(b) Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☒

(2) If you did not raise this issue in your direct appeal, explain why: ___Evidence was only___ recently discovered and was suppressed by the Government, and could not have become known by Defendant although due diligence was exercised by the Defendant in his attempts to obtain this material, given his repeated discovery requests.

**(c) Post-Conviction Proceedings:** Suppression occurred well before trial, during, and after.

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☒    No ☐

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: ___Motion for leave to file Rule 33 motion for new trial - BRADY violations alleged.___

Name and location of the court where the motion or petition was filed: US Dist. Ct. Kansas - Topeka Topeka, KS 66683 444 SE Quincy,

Docket or case number (if you know): 03-3369

Date of the court's decision: Currently pending.

Result (attach a copy of the court's opinion or order, if available): ___N/A___

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐    N/A - Mtion currently pending and was recently filed.

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐    N/A

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐    No ☐    N/A

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: ___N/A___

___

___

___

___

___

**GROUND THREE:** ___See Attached.___

___

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):
___See Attached.___

___

___

___

___

___

___

___

___

___

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒   No ☐

(2) If you did not raise this issue in your direct appeal, explain why: ___N/A___

___

___

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: ___N/A___

Name and location of the court where the motion or petition was filed: ___N/A___

___

Docket or case number (if you know): ___N/A___

Date of the court's decision: ___N/A___

Result (attach a copy of the court's opinion or order, if available): ___N/A___

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ☒   N/A

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑   N/A

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑   N/A

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: ___N/A___

_____

Docket or case number (if you know): ___N/A___

Date of the court's decision: ___N/A___

Result (attach a copy of the court's opinion or order, if available): ___N/A___

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: ___N/A___

_____

_____

_____

_____

**GROUND FOUR**: __See Attached.__

_____

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

    See Attached.

_____

_____

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☒  No ☐

    (2) If you did not raise this issue in your direct appeal, explain why: _____N/A_____

_____

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐  No ☒

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: ____N/A_____

Name and location of the court where the motion or petition was filed: ___N/A_____

_____

Docket or case number (if you know): ___N/A_____

Date of the court's decision: _____N/A_____

Result (attach a copy of the court's opinion or order, if available): _____N/A_____

_____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐  No ☐  N/A

    (4) Did you appeal from the denial of your motion, petition, or application?

        N/A
        Yes ☐  No ☐

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ☐  No ☐ N/A

    (6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____N/A_____

_____

Docket or case number (if you know): _____N/A_____

Date of the court's decision: _____N/A_____

Result (attach a copy of the court's opinion or order, if available): _____N/A_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _N/A_____

_____

_____

_____

_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?

If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _Brady Issues - Ground 2 have not been previously presented___

based on Government suppression of this evidence and Defendants only recently discovered this evidence. Additionally, Defendant raises sentencing issues as to

disparity in imposition of sentence pursuant to recent 2007 Amendment of USSG Guidelines.

_____

_____

_____

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?        Yes ☒   No ☐

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _US District Court KS - Topeka, 444 SE Quincy_
Topeka, Kansas 66683 Case No. 03-3369; Motion for leave to file Rule 33

Motion for New Trial Based on Brady Violations._____

_____

_____

_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:
(a) At preliminary hearing: _William K. Rork_____

_____1321 SW Topeka Blvd. Topeka,KS 66612_____
(b) At arraignment and plea: _Same as above._____

_____
(c) At trial: _____Same as above._____

_____
(d) At sentencing: _____Same as above._____

_____

Page 12

(e) On appeal: _Same as above._____

_____

(f) In any post-conviction proceeding: _Same as above._____

_____

(g) On appeal from any ruling against you in a post-conviction proceeding: _Same as above._____

_____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?      Yes ☒ No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?      Yes ☐ No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _N/A_____

_____

(b) Give the date the other sentence was imposed: _N/A_____

(c) Give the length of the other sentence: _____N/A_____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?   Yes ☒ No ☒

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you
must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not
bar your motion.*_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.
§ 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The limitation period
shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in
violation of the Constitution or laws of the United States is removed, if the movant was
prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if
that right has been newly recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been
discovered through the exercise of due diligence.

Page 14

Therefore, movant asks that the Court grant the following relief: set aside and/or vacate
Defendant's sentence and grant a new trial based on Brady violations that

prejudiced right to fair trial; dismissal of indictment for STA violations and for
or any other relief to which movant may be entitled.   Resentencing. based on asserted issues, and in

for an evidentiary hearing based on asserted Brady violations.

_Signature of Attorney (if any)_

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct

and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____

_____ (month, date, year).

Executed (signed) on _14 December 2007_ (date).

_Signature of Movant_

If the person signing is not movant, state relationship to movant and explain why movant is not

signing this motion. _____

_____

_____

IN FORMA PAUPERIS DECLARATION

_____

[Insert appropriate court]

* * * * *

**GROUND ONE: THE GOVERNMENT VIOLATED THE DEFENDANT'S STATUTORY RIGHT TO A SPEEDY TRIAL AND CONVICTION AND SENTENCE IMPOSED IS IN VIOLATION OF THE LAWS OF THE UNITED STATES, AND CONVICTION AND SENTENCE MUST BE SET ASIDE AND VACATED, AND THE INDICTMENT DISMISSED.**

**(a) SUPPORTING FACTS**

On October 31, 2001, the District Court took the Defendant's motion to suppress under advisement, permitting the Government to file a response. On November 5, 2001, the Government filed a response. No additional pleadings were requested by the Court. An unanticipated reply was filed by the Defendant on December 3, 2001. The District Court's Order of February 4, 2002, denying the defendant's motion to suppress, did not make reference to the supplemental authority within the Defendant's reply, while the Tenth Circuit determined the reply had to considered in resolving the pending motion, but noting the defendant did not request leave to file the reply, and the District Court was not awaiting the filing for ruling. Defendant asserts his statutory right to a Speedy Trial was violated contrary to the Speedy Trial Act and the laws of the United States. Defendant requests the District Court vacate the judgment and dismiss the indictment.

Additionally, On January 10, 2001, the court took Defendant Apperson's motion for severance under advisement, indicating he wanted to listen to the audio tapes in the government's possession. A hearing on motions was set for April 20, 2001. The Government filed a motion to continue on March 23, 2001, stating, "the case agent, Karl Nichols, is "unavailable due to family matters on April 20, 2001, and due to the press of other matters it is impossible for the government to fully respond to the pretrial motions filed by defendants and to prepare to represent the government." The Court granted the continuance of the motion hearing to be reset for May 11, 2001, in boilerplate language indicated, "Karl Nichols, D.E.A., is unavailable due to family matters...it is impossible for the government counsel to fully respond to pretrial motions filed by the defendants and to prepare to represent the government...the additional time will not prejudice the parties...such time outweighs the best interests of the public and the defendant in a speedy trial as set out in 18 U.S.C. 3161(h)(8). There was no inquiry by the District Court as to the nature of the matter, and whether there was due diligence by the prosecutor to procure the witness, or why counsel could not be substituted, required under 18 U.S.C. 3161 (h)(8)(C). The Tenth Circuit did not address the Defendant's argument pertaining to the unavailable witness, but found this period of time attributable to the defendant for the

1

reason that a motion to sever was pending, and motions to suppress were filed on March 12, 2001, indicating the clock was tolled from January 10, 2001, until November 5, 2001, the date on which the government filed a response to the defendant's motion to suppress, but did not address the continuances requested by the Government on March 23, 2001, and April 26, 2001.

On April 26, 2001, the Government filed a motion to continue the May 11, 2001 hearing, indicating, "Agent Nichols is unavailable on May 11, 2001." Attached as an exhibit to the Government's motion was a facsimile memorandum from Karl Nichols to AUSA Greg Hough, whereby Nichols states, "I am sending you this memorandum to advise I am to receive an award presented by DEA's Administrator in Washington D.C. on May 11, 2001...this ceremony will conflict with a previously scheduled court appearance in *U.S. v. Pickard*. You have advised me it is important that I attend the awards ceremony and that the Pickard court appearance can be rescheduled...Please let me know when the next court appearance is scheduled." The Court then granted the motion, indicating "Nichols was unavailable, as contemplated by 18 U.S.C. 3161(h)(3)(A)...it is impossible for the government to prepare...the additional time will not prejudice the parties...such additional time outweighs the best interests of the public and the defendant in a speedy trial, as set out in 18 U.S.C. 3161(h)(8)," and reset the hearing for June 21, 2001.

Defendant asserts based on the above and foregoing facts, his statutory right to speedy trial was violated in contravention of the laws of the United States. The Government, did not articulate a basis for such a continuance for the Court's consideration in balancing the ends of justice and the best interest of the public in a speedy trial. Wherefore the defendant requests the District Court vacate his sentence and dismiss the indictment.

**GROUND TWO: THE GOVERNMENT VIOLATED IT'S BRADY/GIGLIO OBLIGATIONS BY SUPPRESSING WITNESSES CRIMINAL AND INFORMANT BACKGROUNDS SPECIFICALLY REQUIRED BY DEFENDANT, AND HIS JUDGEMENT OF CONVICTION AND SENTENCE IMPOSED IS IN VIOLATION OF THE CONSTITUTIONAL GUARANTEE OF DUE PROCESS OF LAW CONTAINED IN THE FIFTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION**

**(a) SUPPORTING FACTS:**

The government suppressed an extraordinary and unparalleled range of evidence specifically requested in defendant's pretrial motions for impeaching evidence (Doc. 47), disclosure of exculpatory Brady materials (Doc. 48), and for discovery, inspection, and disclosure (Doc. 49).  The Court has stated it was aware of "one instance" (*State v. Worthy*), where Skinner was an informant, while the government disavowed knowledge of cases involving "*Merit*" and "*McKinley*" (with AUSA stating at trial, "I have absolutely no idea what he's talking about on the *Merit* and *McKinley* case.  The Government asserted "Washington, D.C." did a background check on Skinner and Agent Nichols also later conducted separate background checks on Skinner.  The Court, in a post-trial decision, stated it was "unaware of any material that has been intentionally withheld from the defendants" and that defendant's motions to the contrary were "woefully lacking any detail." Defendant now has details, clarifying in part the magnitude of government suppression.

**A:) THE GOVERNMENT SUPPRESSED SKINNER'S INFORMANT HISTORY**

As will be supported by additional exhibits and discussion in defendant's separate memorandum, Defendant has discovered suppressed records describing Skinner's informant and underlying criminal activity in at least 21 cases, including the cases involving *Merit* and *McKinley* about which the government had "absolutely no idea" v.12:

1) *U.S. v. E. Lavay **McKinley*** (92-CR-128, D. Wyoming, 1993 partial transcript attached as Exhibit 1); 2) *U.S. v. Yvonne Wilson, J.F. Spann, Jam **Merit**, and Oded Benary* (CR-87-00080-RCB, D. Arizona, 1992, partial transcript attached as Exhibit 2); 3) *U.S. v. Maureen Lane* ((1:1986-CR-00845, 01.01.86 S.D. New York); 4) *U.S. v. Donald Eugene Linville, James Max DuFriend, Claude Denis, Lori Englebrecht, Jack Hamilton, Donald Kishbaugh, Kevin Guffrey, Wayne Kemp, Brad Grein and Timothy Booker* (4:86-CR-0048-TR6-1, N.D. Oklahoma); 5) *U.S. v. Boris Olarte-Morales*, 992 F.2d 1223 (10th Cir. 1993); 6) *U.S. v. Lou Stalling*, 810 F.2d 973 (10th Cir. 1987); 7) *U.S. v. Steve Emery*, 61 F.3d 917

3

(10th Cir. 10=995); 8) *U.S. v. George Jim Conway*, 57 F.3d. 1081 (10th Cir. 1995); 9) *U.S. v. Tanasis Kanculis* et al. (4:2001CR00096-HDC-2, N.D. Oklahoma); 10) *U.S. v. Ryan Overton* (01-00341-01CR-W-3, W.D. Missouri); 11) *U.S. v. Roderick Walker* (2004, N.D. Oklahoma); 12) Case involving "Marlana Vacaro"; 13) Case involving "Maryanne Rubino"; 14) Case involving "B.C.C.I."; 15) Case involving "Operation Lollypop"; 16) Case involving "Operation Greenback"; 17) Case involving a "Narcoterrorist Organization"; 18) *U.S. v. Warner* (9: 1991 CR 08061, S.D. Florida); 19) *U.S. v. Gravelle* (o. 1993 mo-041256, 6/01/1992; o:1992 CR 06079, 6.23.1992, S.D. Florida); 20) Cases

involving "John Morgan" of Jamaica; and 21) A case Skinner refused to disclose during his testimony in *Merit*.

## B:) THE GOVERNMENT SUPPRESSED SKINNERS UNDERLYING CRIMINAL ACTIVITY LEADING TO HIS COOPERATION IN PRIOR CASES.

The government failed to disclose Skinner's investigative history by federal agencies concerning his criminal involvement in numerous cases, including but not limited to the following matters:

1)    The government suppressed Skinner's criminal association with banker Maureen Lane, and his utilization of Lane to conduct a securities fraud for which Skinner was convicted in civil proceedings, while Skinner acted as an informant against Lane, resulting in *U.S. v. Maureen Lane* (1:1986 CR 00845, 01/01/86 S.D. New York);

2)    The government suppressed Skinner's continuing criminal activity while acting as the informant in *U.S. v. Merit* (CR-87-00080-RCB, D. Arizona, 1992), during which Skinner was arrested on at least two occasions, and resulting in Skinner asserting his Fifth Amendment privilege 52 times in *Merit*;

3)    The government suppressed Skinner's continuing criminal activity while acting as the informant in *U.S. v. McKinley* (92 CR 128, D. Wyoming, 1993) and involving Skinner's years of offshore banking fraud with McKinley while neglecting to disclose this activity to federal agencies with whom he was cooperating in other cases in the Bahamas, Jamaica, and the Cayman Islands;

4)    The government suppressed Skinner's perjury in *Merit* concerning his long-term shipping activity in Jamaica with John Morgan, a major drug smuggler;

4

5)    The government suppressed Skinner's continuing criminal
association with smuggler John Morgan of Jamaica while Skinner
was an informant in *Merit*, *McKinley*, *Worthy*, and *U.S. v. Linville*
(4:86-CR-0048-TRB-1, N.D. Oklahoma);

6)    The government suppressed Skinner's criminal involvement
with cocaine smuggler Boris Olarte, resulting in Skinner's
informant activity in U.S. v. *Boris-Olarte-Morales*, 992 F.2d 1223
(10th Cir. 1993);

7)    Skinner's MDMA trafficking activity associated with the
suppressed manner of *U.S. v. Tanasis Kanculis et al.*   (4:2001 CR
00096-HDC-2, N.D. Oklahoma);

8)    The government suppressed Skinner's MDMA trafficking
activity associated with the suppressed matter of *U.S. v. Ryan
Overton* (01-00341-01CR-W-3, W.D. Missouri);

9)    The government suppressed Skinner's LSD trafficking activity
associated with the suppressed matter of *U.S. v. Roderick Walker*
(2004, N.D. Oklahoma);

10)   The government suppressed Skinner's entire criminal
investigative history by DEA since the mid 1980's, from prior to
the establishment by DEA of Skinner's investigative file in 1986
concerning his criminal activity through the present time (with
the exception of several DEA-6 reports from October, 2000 – July
2001, and a partial DEA-6 report in September, 1997).

11)   The government suppressed Skinner's entire criminal
investigative history by FBI, Customs, and IRS since 1983 through
the present time, and including suppression of multiple federal
agencies' investigative files involving Skinner in the OCDETF
matter of Operation WHITERABBIT; and

12)   The government suppressed Skinner's criminal investigative
history involved in DEA Special Enforcement Program FLASHBACK
from July 1997 – July 2001 and through 2003.

Each of these enumerated instances will be discussed and analyzed
in the memorandum of facts and authorities together with
supporting exhibits, to this initial motion to vacate.

## C:) THE GOVERNMENT SUPPRESSED PRIOR INVESTIGATIONS OF SKINNER BETWEEN 1997 – 2000

The government suppressed major federal and state investigations
of Skinner in the instant case.   Although both agents Sorrell and

Nichols averred there were <u>no prior investigations of Skinner</u>
before his allegedly spontaneous calls to DOJ and DEA in October
2000 (R. 64, P. 1173, 10-25, P. 1174, 1-22, R.65, p.1416, 7-14,
R. 78, p.2898, 5-18, R. 78, p. 2911, 17-25, p.2912, 1-2), there
were numerous federal and state and local investigations of his
criminal activities, e.g.

1)   A suppressed investigation by KBI in 1997, wherein the
Attorney General of Kansas issued a criminal investigative
subpoena for toll records of the missile base and Gordon Todd
Skinner involving narcotics violations by Skinner (Case No.
97JHM023, dated July 24, 1997);


2)   A suppressed investigation by DEA involving DEA
Headquarters, DEA Division of Operations West, and the Kansas
City and Tulsa DEA offices, concerning Skinner's drug manufacture
and trafficking from at least September, 1997 forward;

3)   A suppressed investigation from 1997 forward by federal and
Tulsa authorities involving Skinner's drug activity in Oklahoma
and other areas as described in investigative reports issued by
the USAO/Tulsa to Skinner's attorney as Bates 387-397 in *State of
Oklahoma v. Skinner* (CF-03-4213, Tulsa County);

4)   A suppressed investigation involving Skinner from at least
July 1999 by DEA and Customs concerning the matter of *Gonzales v.
O Centro Espirita Beneficiente Unaio do Vegetal et al.* (S.Ct.
Case No. 04-1084, November 1, 2005);

5)   Suppressed investigations of Skinner prior to October 2000
concerning "property crimes, tax crimes, Regulation 6(a)
violations (and) drug related offenses "known to the government
and to state prosecutors and potentially international
prosecutors" as indicated in letters to DOJ Official John Roth by
counsel well after Skinner had received immunity from Roth;

6)   Federal, state and local investigations of Skinner prior to
October, 2000 relating to Skinner's laundering of $1,000,000. In
his illicit funds in Las Vegas casinos'

7)   Suppressed DEA reports in 2001 of Skinner's involvement in a
"25,000 pill MDMA deal" in August 2000 (as discussed in grand
jury proceedings in 2003 in *U.S. v. Skinner* D. Nevada, 2003 and
cited in *Skinner v. Denny* (3:06-CV-00537-RLH-RAM, D. Nevada) as
well as DEA-6's provided as discovery in the suppressed matter
involving Skinner in *U.S. v. Overton* (01-00341-01CR-W-3, W.D.
Missouri);

**D:) THE GOVERNMENT SUPPRESSED INVESTIGATIONS OF SKINNER BETWEEN 2000 -2003**

The government suppressed criminal investigations of Skinner after his granting of immunity and before trial in the instant case, e.g.

1)   Suppression of investigations for drug trafficking and other crimes of skinner by DEA and FBI in Seattle in 2002 - 2003.;

2)   Suppression of criminal investigations in Arizona in 2001 - 2002;

3)   Suppression of investigations of Skinner involving the ultimate distribution and control of Skinner's $1,000,000. In laundered illicit funds in Las Vegas.

**E:) THE GOVERNMENT SUPPRESSED AN ONGOING RELATIONSHIP WITH SKINNER PRIOR TO TRIAL**

The government suppressed 20 months of daily and ongoing contacts with Agent Nichols _after_ Skinner's deactivation for cause in April 2001.  No contact reports or other DEA-6's concerning these activities have been provided to the defense.  Skinner disclosed his constant contact and travel with Nichols in _State v. Skinner_ (CF-03-4213, Tulsa County, P.9, ln 6-16, to be supplemented.

**F:) THE GOVERNMENT SUPPRESSED MULTIPLE DEACTIVATIONS FOR CAUSE AND BLACKLISTING OF SKINNER**

The government suppressed Skinner's deactivation _for cause_ by federal agencies in 1993 involving, in part, Skinner's taping of federal agents phone calls and the later seizure of the tapes by agents in Tulsa during Skinner's involvement in the matter of _U.S. v. Boris Olarve-Morales_ and other cases. (As discussed in _State v. Skinner_, d. p.19, ln 13 - p.20, ln 16, to be supplemented).

Similarly, the government suppressed Skinner's deactivation for cause in 2001 by Nichols.  Although Nichols stated at trial that Skinner was deactivated in that "he really wasn't providing us with any actionable information" (_Nichols cross_, Mar. 3, 2003, p. 3045, ln 18), Nichols in emails provided as Bates 384-386 in _State v. Skinner_ (ld.)stated "Yes, there is an <u>unsatisfactory</u> deactivation report."

7

The government also suppressed Skinner's blacklisting - within weeks of trial - by Nichols to "all of DEA" as discussed in AUSA Hough's emails provided as Bates 384-386 in *State v. Skinner* (Id.)

## G:) THE GOVERNMENT SUPPRESSED SKINNER'S "CI ASSESSMENT"

Although at trial Skinner's "CI Assessment" was repeatedly requested, the government withheld and continues to withhold the assessment, more properly termed the Initial Suitability Report and Recommendation (ISR&R) and the Continuing Suitability Reports (CSR) concerning Skinner.  The government failed to comply with the Court's order at trial ("I order you to give it to them."

"Give them as many copies as they want." R.29, p.9, 9-12).  To date the CI Assessment has not been provided to the defense.

## H:) THE GOVERNMENT SUPPRESSED $1,000,000 IN BENEFITS TO SKINNER RETAINED "IN VIOLATION OF FEDERAL LAW"

The government failed to disclose that Skinner was permitted to retain $1,000,000 in laundered illicit funds and other criminally-derived assets.  The government also failed to disclose the location and ultimate disbursement of these funds into accounts controlled by Skinner.  Although counsel for Skinner was warned on November 3, 2000 by AUSA/SF Silano that "retention or use of such assets would be a violation of federal law", Skinner nevertheless was permitted by DEA to illegally retain the $1,000,000 in undisclosed benefits.

## I:) PRIOR TO SENTENCING, THE GOVERNMENT SUPPRESSED NUMEROUS REPORTS OF INVESTIGATION CONERNING SKINNER'S CLANDESTINE LSD/MDMA LABORATORY IN TULSA AND SKINNER'S CONTINUING DRUG MANUFACTURE AND DISTRIBUTION DURING TRIAL

Counsel for defendant reasserted at sentencing, all motions for prosecutorial misconduct for suppression of exculpatory evidence. However, counsel and the Court at sentencing in November 2003, were unaware that the government failed to disclose, at a minimum - not only all of the matters discussed in Sections A-I *supra* - but also the following DEA-6 reports of investigation:

1)   A June 12, 2003 interview by DEA/Tulsa (File No. GFMG-03-4014) of Krystle Cole, two months after trial in the instant case, describing: a) Skinner's <u>clandestine drug laboratory</u> in Building #3 at Gardner Springs, Inc., the small business owned by Skinner's mother (pg. 10);  b)Skinner's sale of "4000 pills a

8

week" from April 2002 through the time of defendant's trial (pg. 8); and c) Skinner's trafficking of MDMA during the period of his cooperation with DEA (pgr. 7).

2)    A June 30, 2003 interview (File No. FGMG 03-4014) of a witness describing: a) Skinner's drug manufacture and distribution prior to and during trial in the instant case (pg. 1-2); b) The witness' visit to <u>Skinner's clandestine LSD/MDMA laboratory between June 2002 and June 2003</u> (pgr. 9); and c) the witness' provision of drug samples obtained from Skinner;

3)    Numerous interviews of many witnesses describing Skinner's continuous hosting of drug parties at hotel suites in the same time frame as Skinner's appearances as a government witness;

4)    A July 16, 2003 interview of William Hauck - later a government witness in *State v. Skinner* - describing, inter alia: a) Skinner's use of trucks from his mother's business to smuggle marijuana; b) Skinner's smuggling of pharmaceuticals from Mexico; c) <u>The use of a pill press by Skinner's wife Krystle Cole in Skinner's hotel room to manufacture MDMA pills on June 28, 2003</u> (Cf. Cole's interview *supra* with DEA on June 12, 2003 to purchase a $175,000 tugboat in Louisiana to move drugs concealed in false compartments; e) Skinner's meeting with DEA <u>during</u> Skinner's kidnaping, drugging and assault of an 18 year old victim at a nearby hotel room; f) Skinner's attempt to hire Hauck in a murder -for-hire scheme; and g) Skinner's involvement with Boris Olarte (see suppressed case of *U.S. v. Boris-olarte, Id., supra*).

5) Other relevant witness interviews as will be discussed in the memorandum of facts and authorities

## MATERIALITY OF THE GOVERNMENT'S BROAD BRADY/GIGLIO VIOLATIONS

The Government, in it's response, is invited to refer to any case in which is surpassed the range of *Brady* violations described herein.  There appears to be no other proceeding in which *Brady* violations were more numerous or more protracted. Although materiality may be inferred easily from the Government's extreme suppressions, and more detailed analysis of the currently known suppressions with references to explicit exhibits and transcript portions will be provided in a subsequent memorandum, the overall materiality of the suppressed records may be categorized in part as follows:

1)    The suppressed prior investigations of Skinner are not cumulative or merely impeaching, but are probative of Skinner's culpability;

2)   Federal agents perjury about prior criminal investigations of Skinner undermine the confidence in the quality and integrity of the instant case;

3)   The Government's continuing refusal to produce records even after explicit orders by the Court and defense counsel's discoveries, indicate an inherent materiality in the records; Materiality reasonably may be inferred in this instance although in the alternative the Court may wish to order production of the suppressed records in order to confirm such materiality.  Were it otherwise, the Government would have incentive to suppress records and then rely on their absence to negate any claims of materiality unless fortuitously as here, discovered by defense investigation;

4)   The suppressed records indicate Skinner is no unusually experienced informant, with a consistently troubling criminal investigative history while seemingly cooperating with federal agencies, and this erratic and lengthy history coupled with multiple deactivations for cause and blacklisting is probative of Skinner's culpability;

5)   The Appeals Court noted "the testimony of Skinner" along with unspecified physical evidence, was sufficient for conviction, and the jury found "Skinner to be a credible witness."  Hence, while Skinner was not sufficiently impeached, the jury did not have the benefit of the Brady material described supra, or yet to be provided, describing the problematic prior activities of a sophisticated informant who controlled the physical evidence;

6)   The Court itself did not have the benefit of suppressed DEA reports demonstrating Skinner's second clandestine laboratory or his continuous drug trafficking prior to, during, and after trial;

7)   The suppressed records support the defendant's theory of defense - that Skinner was the culpable party;

8)   The suppression of criminal investigative records of Government witnesses Guinan and Salvinelli further undermines the Government's efforts to use these witnesses to Bolster Skinner's credibility;

9)   The tapes of detectives conversations with Skinner were hardly conclusive, in that the District Court noted defendant's did not explicitly discuss, "illegality or use the term LSD."

10)   By the Government's position, it may withhold requested
records while at the same time denying materiality of such
records.   However, materiality analysis is not unilateral, and
production is required for defendant's arguments to be
established, followed by the Court's ultimate determination of
materiality;

11)   The suppressed records prevented Skinner from being
impeached by contradiction rather than by character, e.g. by
attacking Skinner's inconsistent statements as to his occupation
and activities in Merit and McKinley;

12)   In that the District Court concluded, in denying production
of records in the Worthy matter ("the jury can make its own
determinations about Skinner's credibility), suppression of
records prevented the jury from adequately assessing Skinner's
misconduct and the Government's complacency about that misconduct
in prior cases;

13)   The suppressed records call into question the veracity of
the Government agents at trial;

14)   The suppressed records also call into question Skinner's
bias and motive for perjury;

15)   The suppressed records would have demonstrated Skinner's
prior drug distribution, intent, and knowledge;

16)   The suppressed records of prior investigations of Skinner
and Guinan from 1997-2000 would have shown the criminal activity
was close in time, highly probative, and similar to conduct
ascribed to the defendant;

17)   The suppressed records would have shown Skinner's motive to
provide testimony favorable to the Government order to "seek a
deal" on his other non-immunized criminal conduct known to
prosecutors before his immunity for LSD manufacture, including
his continuing retention and use of $1,000,000 in illicit assets
"in violation of federal law."

18)   Importantly, the existence of the suppressed records thus
far discovered by the defense - and still not provided by the
Government - easily demonstrates an egregious violation of the
Confrontation Clause in that exposure of Skinner's motivation for
testifying was precluded and counsel for the defendant was
prevented in conducting an otherwise appropriate cross-
examination designed to show a prototypical form of bias on the
part of the witness and to expose to the jury the facts from

11

which jurors could draw inferences relating to the reliability of the witness, especially as here - when the relations between Skinner and the Defendant were such as to lead Skinner to slant his testimony against the Defendant.  Defense counsel could not cross examine on material not provided.

19)  The suppressed records would have shown that the testimony of Skinner may have been affected by the fear or favor growing out of the disposition of Skinner's undisclosed and pending criminal charges;

20)  In that Skinner was the primary Government witness, the value of the suppressed records to the cross-examination in demonstrating bias in increased, and evidence that could be used

to discredit such an important witness or cast doubt on his veracity is usually material;

21)  The suppressed records provided evidence of Skinner's fraud, deceit and misrepresentation as probative of his untruthfulness pursuant to Fed. R. Evid. 608(b);

22)  The suppressed records of Skinner's crimes, wrongs and other acts would have shown Skinner's modus operandi, intent, plan,

preparation and motive to shift blame toward others pursuant to Fed. R. Evid. 404(b); and

23)  Defendant was prejudiced not only by items 1-22 supra, but also by the reasonable probability that disclosure of the suppressed records would have affected the Court's ruling on pre-trial and post-trial motions, as will be further discussed in the memorandum.

        In the event the Court does not infer materiality from the extraordinary breadth of suppression in this instance, an order to compel production of all records previously specifically requested in pretrial Brady and discovery motions is requested, followed by a hearing for the Court's own materiality determination.

        The Court in this unusual matter of such egregious suppression, may prefer to render it's decision solely for prophylactic reasons, to prevent the Government from engaging in further conduct of such magnitude.  In that event, the suppressed records resulting in increasing evidence of misconduct by multiple Government officials need not be produced.

12

Defendant asserts the Government violated *Brady/Giglio* obligations by suppressing criminal backgrounds of witnesses in violation of the Constitutional Guarantee of Due Process of Law contained in the Fifth and Fourteenth Amendments of the Constitution.   Wherefore the defendant requests the District Court grant a new trial.

13

**GROUND 3:   THE GOVERNMENT VIOLATED THE DEFENDANT'S EXPECTATION OF PRIVACY IN ENTERING PREMISES WITHOUT A SEARCH WARRANT AND JUDGEMENT OF CONVICTION AND SENTENCE IMPOSED IS IN VIOLATION OF THE FOURTH AMENDMENT OF THE CONSTITUTION**

**(a) SUPPORTING FACTS**

The exclusionary rule is rarely asserted in motions to vacate pursuant to 2255.  Defendant's assertions of his expectation of privacy were only partially addressed in the Tenth Circuit's direct appeal decision.  The previously raised indicators of a social relationship giving rise to an expectation of privacy were not addressed by the Tenth Circuit, and the issue was not fully and fairly litigated on appeal.  The Tenth Circuit incorrectly stated, "nor was there evidence suggesting that either defendant stayed at the site or otherwise had some sort of possessory interest in the site."  The panel did not address Defendant's references to the record in the direct appeal brief or the reply brief containing detailed facts showing that both defendants stayed at the property on numerous occasions prior to November 2000, could enter and leave at will, could exclude others from the property, kept clothing and possessions at the property, remained for days on several occasions and otherwise had a social relationship easily giving rise to an expectation of privacy under the standard in *United States v. Rhiger*, 315 F.3d 1283, 1287 (10th Cir. 2003).  In a recent opinion, *Callahan v. Millard County*, 494 F.3d 891 (10th Cir. July 16, 2007), the Court held (1) by entering a suspect's home based on the invitation of an informant and without a warrant, direct consent, or other exigent circumstances, police officers violated his Fourth Amendment rights, and (2) officers could not reasonably have believed that their warrantless entry into the suspect's home, based only on the invitation of the informant and in the absence of any exigent circumstances, did not violate his Fourth Amendment rights.

A variety of facts evidence a social relationship giving rise to an expectation of privacy:  Pickard's testimony was corroborated by government witnesses, For example, Pickard was a regular social guest at the premises (R. 46, 1295-96).  "Pickard attended the ayahuasca gatherings"; other gatherings in small groups (R. 22, 198); visited the property at other times (R. 75, 2532-33); stayed overnight after "burying himself into the Wamego site" and "digging in" (R. 21, 127); attended other social events ( R. 73, 2192); visited to make phone calls, borrow funds, or gather belongings ( R. 73, 2226-27); was regarded as a friend, a guest; ( R. 73, 2226-27); was seen by others ( R. 81, 3199);

14

introduced to others at the base ( R. 81, 3220); and stayed on "several occasions" for "several days" ( R. 15, 537-38);

Pickard's statement that he sold the property to new owners in April, 2002, excluding Skinner against his will, was corroborated by Skinner,( R. 34, 1423) who acknowledged the Court entering transfer of record , and the Sheriff's Department thereafter cutting the lock and issuing a trespass instruction to Skinner.  Pickard had pass codes and keys for the property prior to October, 2000.  This fact was corroborated by government witnesses, Agent Nichols, Skinner, Michael Hobbs and Shanna Everhart.  Pickard stored the pass code on his computer, as noted by Skinner.

Pickard left books, clothing and records at the property, which was corroborated by Skinner, Hobbs and Everhart, and the recordings of Skinner.  When detained, Pickard possessed indicia from the property and occupants including gas bills, receipts, prescription bottles, vehicle receipts, and mail.  Pickard's statements concerning the Power of Attorney were corroborated by Skinner.  Both the trustee and Pickard periodically excluded Skinner from the premises, as confirmed by Agent Nichols.

In the event the Court agrees that defendants had an expectation of privacy overlooked in the appellate court, as will be discussed in detail in the forthcoming memorandum to this motion to vacate, then numerous intrusions must be reconsidered including but not limited to - a) the search warrant service; b) agents and Skinner's forklifting of the laboratory for days before the search warrant; c) Skinner's intrusion as a Government Agent before the warrant - and his manipulation of the evidence and placement of ET for viewing on the "walkthrough"; d) agents' breaking of sales prior to the warrant; and e) the closed circuit television application prior to exhaustion of investigative techniques using as the court now knows a highly experienced and problematic informant such as Skinner.  Finally, the issue of the Defendant's arguments that the severity of the intrusions themselves generate an expectation of privacy was not addressed by the Tenth Circuit, as will be further addressed in the memorandum.

Therefore, Defendant requests the Court vacate the conviction and sentence as his expectation of privacy was violated, as prohibited by the Fourth Amendment.

15

**GROUND 4: THE DISTRICT COURT'S GRANTING OF THE GOVERNMENT'S MOTION IN LIMINE REGARDING SKINNER VIOLATES THE LAWS OF THE UNITED STATES AND THE SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES**

### (a) SUPPORTING FACTS

As will be discussed in detail in the supporting memorandum, the Court's decision concerning the Government's motion in limine regarding Skinner must be entirely revised in light of what has been discovered concerning Skinner's problematic criminal investigative and informant history, in that the probative value of the extraordinary range of suppressed cases and activities involving Skinner is heightened markedly, and the jury did not have the benefit of such evidence of Skinner's factual inconsistencies, frauds and untruthfulness as demonstrated, e.g. in *Merit* and *McKinley*, as the Court suggested, "to make it's own determination regarding Skinner's credibility."  Defendant asserts the broad range of suppressed material reasonably would have affected the Court's pretrial rulings on this motion, thus, prejudicing the Defendant.

The defendant was restricted in his ability to prepare a defense, as well as confront Skinner or "contradict" his testimony.  The motion in limine issue was not fully and fairly litigated in the Appellate Court (as would pertain to what information was known to Defendants' during the pending appeal and prior thereto), as the Tenth Circuit denied repeated requests by the defense to expand the page limitation of it's principal brief, while granting the Government over twice the amount of pages for it's response brief than the defendant was allowed for his principle brief.(i.e. 250 pages Response Brief vs. 100 pages Principal Brief).  With the limitations imposed, the defendant was unable to fairly and fully litigate this issue during the pending appeal.  Therefore, a supplemental memorandum will be provided with detailed arguments.

16

**GROUND 5: THE REFUSAL TO ALLOW DEFENSE WITNESSES TO TESTIFY AND REFUSAL TO GRANT IMMUNITY TO PROPOSED DEFENSE WITNESSES, VIOLATES THE DEFENDANT'S RIGHT TO DUE PROCESS AND COMPULSORY PROCESS UNDER THE SIXTH AMENDMENT.**

**(a) SUPPORTING FACTS**

Due to the array of suppressed DEA-6's involving witnesses Krystle Cole, Ryan Overton, and Shawn Rolph - discussed under Ground 2, Brady violations, supra, the Court's ruling on defense witness testimony and immunizing must also be revisited in detail; for the suppressed reports clearly demonstrate an attempt to distort the fact finding process by the Government.  A detailed discussion of this matter, with corresponding exhibits will be provided in the supplemental memorandum and any amended motion to vacate.

When seeking to call witnesses at trial, Rork proffered testimony which was denied.  Rork had to determine what order and when witnesses might be called. (R., 80, p. 3100-3119, R., 81, p. 3236-37).

Rork proffered that Brandon Valerius would testify to events he observed, and activities undertaken while he worked at the base. (R., 86, p. 3496).  Rork's final witness list did not include Brandon Valerius' father, but indicated "any other witnesses..." (R., 86, p. 3501). Rork indicated the reason for testimony was based on statements just disclosed during conversations with Valerius' father.  Brandon would describe equipment being set up, people coming in and equipment being removed.  The witness' testimony is relevant and does not deal with impeaching Skinner, but deals with Valerius' conviction, contact at the base, and his knowledge of Skinner's activities. (R., 86, p. 3503-04).

Rork wanted to offer the testimony, "to show equipment was there in 1996, and manufacturing equipment was set up in July, 1996, then removed, contradicting Skinner's testimony it was a couple of years after he acquired the base, when he finished remodeling in 1998 that he brought manufacturing equipment. (R., 86, p. 3509).  The Government asked Skinner, "when did you set up this equipment?" and Rork states, "we're putting on this evidence to contradict their evidence." (R., 86, p. 3511).  The judge initially rules he will not allow the evidence in, and later rules he can put evidence in only about lab equipment. (R., 86, p. 3511-14).

17

Rork proffered, if Overton was given immunity to testify, he would discuss "large sums of money given to him by Skinner during 1999 and 2000, at least 10 kilograms of ET per year came into the base from 1999-2000, through Gardner Springs. He would discuss he was advised by Skinner in the summer, 2000, and had been offered $100,000 to assist in making LSD with this lab equipment.  He would discuss offering information to the DEA for a reduction, which was refused, and that DEA refused to discuss Skinner and information regarding when he was at CCA or Western District of Missouri, as would Krystal Cole discuss, about the MDMA importation from Poland, and Overton's presence, talking to the DEA when Cole was talking to Skinner at the base, on August 11, 2000.  Testimony would reveal there Skinner went to the Government in September of 2000, to work out immunity." (R., 86, p. 3585-86).

Rork indicates Richard Dawson, who sold the missile base to Skinner, knew Marquardt and was specifically advised by Marquardt his children should not use drugs.  Dawson was surprised when he learned Marquardt was manufacturing drugs.  Rork indicates, "our main purpose for calling him would be the Marquardt association known to Skinner, and discussing the large sums of U.S. currency there before Y2K. (R., 86, p. 3591-92).

Proffered testimony of Dr. Dennis Zigrang was provided by defense counsel who indicated, "When I asked Nichols on cross-exam if he was aware of a situation when Skinner was caught manufacturing LSD, Nichols referred to Zigrang catching Skinner manufacturing at age 14 or 15...he can't be here until Tuesday, he's 80 years old...was talked to by Nichols and others...Once he advised the Government Skinnner was capable of synthesizing LSD, that he caught him synthesizing LSD and mescaline. He was not going to be called by the Government. Testimony would reveal Skinner was able to synthesize LSD and mescaline at an early age. (R., 86, p. 3592).

Proffered testimony of Shana Everhart, who lives in California, and is off on Mondays, available the last two Sundays and Mondays to testify.  Testimony would be, "there was widespread use of drugs by Skinner in August 2000, that lab equipment was brought from some location to Wamego, and she was on the property in August, 2000.  She was there when discussion about what to do with equipment occurred when Hobbs was asked by Skinner to take the equipment to Nevada.

Rork proffered the testimony of Krystle Cole was, "she has indicated if she was given immunity in full, she would testify the DEA-6s contained incorrect information.  The reports contain

information put there by law enforcement and other matters
incorrect in reports." (R., 86, p. 3599-3600).

Rork proffered testimony by Detective Rolph who worked
security at the base.  Rolph was prepared to testify about LSD
distribution activity by Skinner known by the DEA prior to
Pickard ever having met Skinner.  (R., 83, p. 3385-3422). The
Judge rules it is an unsubstantiated allegation and cannot be
offered under Rule 403. (R., 83, p. 3397).  Such proffered
testimony was relevant to Defendants' defense.

In requesting immunity for witnesses, Rork indicated, "Mr.
Overton will not testify unless he is given immunity.  If Overton
was called to testify he would discuss large sums of money given
to him by Skinner during 1999 and 2000.  He would discuss at
least 10 kilograms of ET per year came into the base in 1999 and
2000 through Gardner Springs. (R., 86, p. 3584-3585).  He would
discuss he was advised by Skinner in 2000, and offered $100,000
to assist him in making LSD and offered this information to the
DEA in his own case for a reduction, which was refused.  The DEA
refused to discuss Skinner and information when he was at CCA or
Western District of Missouri.  Krystal Cole would testify about
the August 11, 2000 MDMA importation from Poland and Overton's
presence while talking to the DEA in Kansas City while Cole was
on the phone talking to Skinner.

Skinner went to the Government in September, 2000 for
immunity. (R., 86, p. 3585-86).  The court determined it is the
prerogative of the Government whether to grant immunity.  Hough
responds, "there is no valid reason." The Court finds "the
government's decision is not a deliberate attempt to distort the
fact-finding process." (R., 86, p. 3589-90).  Counsel was not
allowed to put before the jury specific deals in granting
immunity to Government witnesses, like, "what specific deal do
you have with the government, and for what charge?" Counsel was
only allowed to ask "what is your understanding of your
agreement," and witnesses responded, "to not be in trouble." (R.,
71, p. 1881-82, R., 72, p. 2145-46, R., 76, p. 2627).

Counsel filed a motion and an order was granted to issue a
subpoena to several individuals including the above. (Doc. 275).
All were included in Pickard's witness list. (Doc. 162).  The
judge indicated he would allow Overton to take the fifth
amendment and would find out if the Government would provide him
with immunity. (R., 86, p. 3588).

Upon Rork's proffer of exculpatory testimony of Krystal
Cole, her attorney indicated she would take the fifth amendment.

(R., 80, p. 3099-3117). The Government indicated it would not
grant immunity and the court found it was not a deliberate
attempt to distort the fact finding process. (R., 80, p. 3117).

Upon consideration of the above, the District Court should
grant a new trial, as the defendants were unable to call
witnesses and present their defense.

**(b) Direct Appeal of Ground 5**:
(1) If you appealed from the judgment of conviction, did you
raise this issue? **Yes**

(2) If you did not raise this issue in your direct appeal,
explain why: **N/A**
_____
_____

**(c) Post-Conviction Proceedings**:

(1) Did you raise this issue in any post-conviction motion,
petition, or application? **No.**

(2) If your answer to Question(c)(1) is "Yes," state:

Type of motion or petition: **N/A**_____

Name and location of the court where the motion or petition
was filed: **N/A**_____
_____

Docket or case number (if you know): **N/A**_____

Date of the Court's decision: **N/A**_____

Result (attach a copy of the court's opinion or order, if
available):_____

**N/A**_____
_____

_____

(3) Did you receive a hearing on your motion, petition, or
application? **N/A.**

(4) Did you appeal from the denial of your motion, petition,
or application? **N/A.**

20

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?   **N/A**

(6) If your answer to Question(c)(4) is "Yes," state:
Name and location of the court where the appeal was filed:

**N/A** _____

_____

_____

Docket or case number (if you know): **N/A** _____

Date of the Court's decision: **N/A** _____

Result (attach a copy of the court's opinion or order, if available): **N/A** _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**N/A** _____

_____

_____

**GROUND 6: PROSECUTOR MISCONDUCT RESULTED IN VIOLATION OF FIFTH
AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION, AND LAWS OF THE
UNITED STATES, AS WELL AS THE SIXTH AMENDMENT RIGHT TO CONFRONT
WITNESSES, UPON GOVERNMENT FAILURE TO DISCLOSE EXCULPATORY
EVIDENCE IN VIOLATION OF BRADY AND FROM GOVERNMENT ALTERATION OF
EXHIBITS VIOLATES DEFENDANTS' RIGHT TO DUE PROCESS AND THE
CONVICTION AND SENTENCE IMPOSED SHOULD BE VACATED AND A NEW TRIAL
ORDERED**

**(a) SUPPORTING FACTS**

**ALTERATION OF EXHIBITS**

Defendant challenges the decisions concerning the
Government's alteration of Exhibit 196, wherein purportedly "the
government counsel was unaware that there was any difference in
the two lists of names and addresses."

During examination of governmental witnesses, this defendant
determined a government exhibit purported to be the computer
printout of his laptop address book had been altered.  (R., 42,
p. 583).  After defendant provided supporting documentation to
the court to independently determine if the computer exhibit was
altered, verification was produced to compare with Government
Exhibit 96, and the defendant was allowed to produce his exhibit
P196, that contained the names and summaries of many DEA agents
this defendant had known or had conversations with before trial.
(R., 42, p. 616).

Defense previously requested the Court to review in camera
prior files of this defendant for governmental agency defense and
actions.  The government and prosecutor advised no such files
existed and the Court determined no information in the file would
be of material benefit to defense. (Doc. 146 at 1).  It was clear
the exhibit was altered to destroy credibility of the defendant
concerning his efforts with the DEA previously.  (R., 42, p.
609).  The government prosecutor would inquire of government
witnesses that it was only the word of this defendant that he had
done anything for the DEA, and the witnesses would respond
affirmatively that no corroborating statements of this defendant
existed.  (R., 42, p. 609-616).  After repeated reference of
questions of that type it was then verified how the government
exhibit was modified.  The court did not hold a full and fair
hearing into the manner in which the exhibit was put together.
(R., 42, p. 616).  The court accepted without further foundation
and over objection the government's reason for how the exhibit
ended up not having the names and summaries of various DEA

22

contacts. (R., 42, p. 609-10).  The exhibit, before alteration, was exculpatory in nature.

Prosecution knew or should have known Agent Sorrell's testimony regarding the missing DEA contacts was false.  After the court had its own computer analyst examine the seized laptop, it was established the Government had been provided with the DEA contacts prior to the trial. (R., 42, p. 600-602).  Rather than striking Government exhibit 196, the court introduced into evidence defendants' exhibits P196A and 196B.

Defendant asserts that alteration of the computer file is not a simple task and requires several procedures non-easily undertaken.  It is also asserted that the prosecutor knowingly used a file purposely provided as altered, by DEA.  Sending a copy of the DEA addresses "to someone else for further review" at DEA Headquarters does not require alteration of the file.

Defendant can demonstrate that file alteration is a protracted and purposeful effort.  Discovery is requested concerning this issue for - although the deletion was discovered at trial and the court did not observe prejudice - the issue of prosecutorial misconduct remains in that this issue of misconduct becomes heightened when placed in the context of broad government suppression of other records discussed in the section on Brady/Giglio supra.  Defendant has also discovered that the altered Government Exhibits of Skinner's Las Vegas records by removing evidence of a prior investigation of Skinner by the Nevada Gaming Control Board.  Given these facts, and those as will be supplemented and set forth hereafter, the conviction should be set aside and the case remanded for a new trial.

## WITHHOLDING OF EVIDENCE FAVORABLE TO DEFENDANTS

At trial, information was not disclosed by the prosecutor. The prosecution offered existence of LSD research reports and Rork indicated items were seized and not made available. (R., 64, p. 1095-1105).  Sorrell testified the only report of drug activity at the base was out of Topeka. (R., 64, p. 1174).  The proffered testimony of Detective Rolph directly contradicts Sorrell's assertion. (R., 83, p. 3387-96).  Bennett, trial counsel for Apperson, asked for the report, and was given two pages by the prosecution who said that was all they had. (R., 65, p. 1221). Sorrell testified nobody confirmed drug activity at the base with Agent Thrower or anyone at the DEA office. (R., 65, p. 1275-77). The government did not disclose known distribution by Skinner, prior to his meeting Pickard.

When counsel was provided with exhibits in preparing his direct appeal, it was discovered in reviewing government exhibits 752 and 754, from the Gaming Control Board, in the subpoena response, the agent enclosed letters from the Department of Justice describing Skinner's informant status, which are missing. The letters were not included in subpoenaed documents prior to their being entered at trial by Nichols, describing them as "Gaming Control Board Records."

It is clear that the prosecutor knowingly and willfully withheld an extraordinary amount of evidence exculpatory to the Defendants, as discussed in the *Brady/Giglio* section, and as will be demonstrated in detail in the Supplement Memorandum filed hereafter.

The prosecutor's methods so infested the trial with unfairness as to make the resulting conviction a denial of due process and the conviction and sentence must be set aside, and the case remanded for a new trial.

**(b) Direct Appeal of Ground 6:**
(1) If you appealed from the judgment of conviction, did you raise this issue? **Yes**

(2) If you did not raise this issue in your direct appeal, explain why: **N/A**_____
_____
_____

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application? **No.**

(2) If your answer to Question(c)(1) is "Yes," state:

Type of motion or petition: **N/A**_____

Name and location of the court where the motion or petition was filed: **N/A**_____
_____

Docket or case number (if you know): **N/A**_____

Date of the Court's decision: **N/A**_____

Result (attach a copy of the court's opinion or order, if available):_____

24

**N/A**

_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?  **N/A.**

(4) Did you appeal from the denial of your motion, petition, or application?  **N/A.**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?  **N/A**

(6) If your answer to Question(c)(4) is "Yes," state: Name and location of the court where the appeal was filed:

**N/A**_____

_____

_____

Docket or case number (if you know): **N/A**_____

Date of the Court's decision: **N/A**_____

Result (attach a copy of the court's opinion or order, if available): **N/A**_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**N/A**_____

_____

_____

25

**GROUND 7: EVIDENCE WAS INSUFFICIENT TO SUPPORT CONVICTION WHEN CONSIDERING NEWLY DISCOVERED EVIDENCE THAT THE GOVERNMENT'S CI WAS MANUFACTURING LSD, FOR WHICH DEFENDANTS' WERE CHARGED AND CONVICTED.   THE JUDGMENT AND SENTENCE MUST BE SET ASIDE AND VACATED AS SUCH AN IMPOSITION VIOLATES DEFENDANT'S RIGHT TO TO FAIR TRIAL UNDER THE 5TH AMENDMENT, AND HIS RIGHT TO CONFRONT WITNESSES UNDER THE SIXTH AMENDMENT AND UNDER BRADY.**

**(a) SUPPORTING FACTS**

Had the Court and Jury had the benefit of the plethora of suppressed records now discovered, the testimony of Skinner - observed by the Tenth Circuit to be found "credible" by the jury - would have been severely impeached, as would the testimony of Government agents.

**(b) Direct Appeal of Ground 7:**

(1) If you appealed from the judgment of conviction, did you raise this issue? **Yes**

(2) If you did not raise this issue in your direct appeal, explain why: **N/A**

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application? **No.**

(2) If your answer to Question(c)(1) is "Yes," state:

Type of motion or petition: **N/A**

Name and location of the court where the motion or petition was filed: **N/A**

Docket or case number (if you know): **N/A**

Date of the Court's decision: **N/A**

Result (attach a copy of the court's opinion or order, if available):

26

**N/A**

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?  **N/A.**

(4) Did you appeal from the denial of your motion, petition, or application?  **N/A.**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?  **N/A**

(6) If your answer to Question(c)(4) is "Yes," state:
Name and location of the court where the appeal was filed:

**N/A**

_____

_____

Docket or case number (if you know): **N/A**

Date of the Court's decision: **N/A**

Result (attach a copy of the court's opinion or order, if available): **N/A**

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**N/A**

_____

_____

27

## GROUND 8(A): DEFENDANT'S SENTENCE WAS IMPOSED IN VIOLATION OF THE LAWS OF THE UNITED STATES, BASED ON THE USE OF DEFENDANT'S 1978 CALIFORNIA CONVICTION IN THAT THERE IS NO FEDERAL PARALLEL IN THE CONTROLLED SUBSTANCES ACT, AND THE COURT SHOULD SET ASIDE THE CONVICTION AND SENTENCE AND RESENTENCE DEFENDANT.

### (a) SUPPORTING FACTS

Defendant Pickard asserts: a) the recent Supreme Court decision in *Lopez v. Gonzales*, 127 S.Ct. 625, 166 L.Ed. 2d. 462, 75 USLW 4013 (2006), precludes the use of the 1978 California conviction, in that there is no federal parallel in the Controlled Substances Act for "attempt" to manufacture; and b)

Pickard was not convicted "at trial" of both priors, but pled nolo contendere.

**(b) Direct Appeal of Ground 8(A):**
(1) If you appealed from the judgment of conviction, did you raise this issue? **No.**

(2) If you did not raise this issue in your direct appeal, explain why: **Defendant has not previously raised this issue, given Lopez v. Gonzales is a recent opinion.**
_____
_____

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application? **No.**

(2) If your answer to Question(c)(1) is "Yes," state:

Type of motion or petition: **N/A**_____

Name and location of the court where the motion or petition was filed: **N/A**_____
_____

Docket or case number (if you know): **N/A**_____

Date of the Court's decision: **N/A**_____

Result (attach a copy of the court's opinion or order, if available):_____

**N/A**

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?  **N/A.**

(4) Did you appeal from the denial of your motion, petition, or application?  **N/A.**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?  **N/A**

(6) If your answer to Question(c)(4) is "Yes," state:
Name and location of the court where the appeal was filed:

**N/A**

_____

_____

Docket or case number (if you know): **N/A**

Date of the Court's decision: **N/A**

Result (attach a copy of the court's opinion or order, if available): **N/A**

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**N/A**

_____

_____

**GROUND 8(B): DEFENDANT'S SENTENCE WAS IMPOSED IN VIOLATION OF THE LAWS OF THE UNITED STATES; PLEA OF NOLO CONTENDERE CANNOT BE USED TO ENHANCE A LATER CONVICTION AND THE CONVICTION AND SENTENCE SHOULD BE VACATED AND THE DEFENDANT RESENTENCED.**

**(a) SUPPORTING FACTS**

Recent cases in the Ninth Circuit indicated that a plea of nolo contendere cannot be used to enhance a later conviction. See *United States v. Nguyen*, 465 F.3d 1128 (9th Cir. 2006).  Pickard did not admit the facts of his prior convictions, but stressed the nolo contender plea.

**(b) Direct Appeal of Ground 8(B):**
(1) If you appealed from the judgment of conviction, did you raise this issue?  **No.**

(2) If you did not raise this issue in your direct appeal, explain why: **Defendant has not previously raised this issue, as United States v. Nguyen is a recent opinion decided after Defendant Pickard was sentenced, and the direct appeal was finalized.**

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?  **No.**

(2) If your answer to Question(c)(1) is "Yes," state:

Type of motion or petition: **N/A**

Name and location of the court where the motion or petition was filed: **N/A**

Docket or case number (if you know): **N/A**

Date of the Court's decision: **N/A**

Result (attach a copy of the court's opinion or order, if available):

**N/A**

30

(3) Did you receive a hearing on your motion, petition, or application?  **N/A.**

(4) Did you appeal from the denial of your motion, petition, or application?  **N/A.**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?  **N/A**

(6) If your answer to Question(c)(4) is "Yes," state:
Name and location of the court where the appeal was filed:

**N/A**

Docket or case number (if you know): **N/A**

Date of the Court's decision: **N/A**

Result (attach a copy of the court's opinion or order, if available): **N/A**

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**N/A**

31

**GROUND 8(C): DEFENDANT'S SENTENCE WAS IMPOSED IN VIOLATION OF THE LAWS OF THE UNITED STATES, PURSUANT TO USSG 2D1.1, DEFENDANT SHOULD HAVE RECEIVED A SENTENCING RANGE REDUCED TO THAT OF COMPARABLE DRUGS, AND DEFENDANT'S SENTENCE SHOULD BE VACATED AND HE REQUESTS HE BE RESENTENCED IN ACCORD WITH §2D1.1.**

**(a) SUPPORTING FACTS**

Pickard also asserts a new matter of law from the recent November 1, 2007 Amendments to the Sentencing Guideline §2D1.1 concerning the Court's reasoning behind the sentencing of crack cocaine.  Insofar as the Supreme Court considered racial disparity in reducing crack sentences to that of cocaine, Pickard asserts that an even higher percentage of Caucasians are sentenced for LSD than are Blacks for crack cocaine, and further argues the same principles must apply to LSD prisoners. Similarly, the sentencing range must be reduced to that of comparable drugs, i.e. mescaline, psilocybin, and DMT.

**(b) Direct Appeal of Ground 8(C):**

(1) If you appealed from the judgment of conviction, did you raise this issue? **No.**

(2) If you did not raise this issue in your direct appeal, explain why: **Defendant has not previously raised this issue, as the applicable provisions of the Guidelines upon which Defendant relies was recently amended in November, 2007, after his direct appeal had been decided.**

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application? **No.**

(2) If your answer to Question(c)(1) is "Yes," state:

Type of motion or petition: **N/A**

Name and location of the court where the motion or petition was filed: **N/A**

Docket or case number (if you know): **N/A**

Date of the Court's decision: **N/A**

32

Result (attach a copy of the court's opinion or order, if available):_____

**N/A**_____

(3) Did you receive a hearing on your motion, petition, or application?  **N/A.**

(4) Did you appeal from the denial of your motion, petition, or application?  **N/A.**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?  **N/A**

(6) If your answer to Question(c)(4) is "Yes," state: Name and location of the court where the appeal was filed:

**N/A**_____

_____

_____

Docket or case number (if you know): **N/A**_____

Date of the Court's decision: **N/A**_____

Result (attach a copy of the court's opinion or order, if available): **N/A**_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**N/A**_____

_____

_____

33

**GROUND 8(D): DEFENDANT'S SENTENCE IMPOSED WAS IN VIOLATION OF THE LAWS OF THE UNITED STATES BASED ON SUPPRESSED BRADY MATERIAL AND FAILURE TO CONSIDER SUCH INFORMATION IN 18 USC 3553(a) ANALYSIS, THUS THE DEFENDANT'S SENTENCE SHOULD BE VACATED, AND HE SHOULD BE RESENTENCED TO PERMIT CONSIDERATION OF SUCH MATERIAL;**

**(a) SUPPORTING FACTS**

Under the facts of the case - with the suppressed Brady/Giglio information on all government witnesses included - the district court would have at least included this information in its 18 USC 3553(a) analysis and imposed a sentence outside the Guidelines Range.

**(b) Direct Appeal of Ground 8(D):**

(1) If you appealed from the judgment of conviction, did you raise this issue? **No.**

(2) If you did not raise this issue in your direct appeal, explain why: **The evidence relied upon is newly discovered evidence not available to Defendant until just recently, well after finalization of his direct appeal.**

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application? **No.**

(2) If your answer to Question(c)(1) is "Yes," state:

Type of motion or petition: **N/A**

Name and location of the court where the motion or petition was filed: **N/A**

Docket or case number (if you know): **N/A**

Date of the Court's decision: **N/A**

Result (attach a copy of the court's opinion or order, if available):

**N/A**

34

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?  **N/A.**

(4) Did you appeal from the denial of your motion, petition, or application?  **N/A.**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?  **N/A**

(6) If your answer to Question(c)(4) is "Yes," state:
Name and location of the court where the appeal was filed:

**N/A**_____

_____

_____

Docket or case number (if you know): **N/A**_____

Date of the Court's decision: **N/A**_____

Result (attach a copy of the court's opinion or order, if available): **N/A**_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**N/A**_____

_____

_____