IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                       Case No. 00-40104-01/02-JTM

WILLIAM LEONARD PICKARD and CLYDE
APPERSON,

    Defendants.

MEMORANDUM AND ORDER

This matter is before the court on defendants' request, invoking the common law right of access to judicial records, to unseal the copy of an informant's DEA file which was previously placed on the court's docket. The court originally denied defendants' request, *United States v. Pickard*, 2012 WL 1658899 (D. Kan. 2012), but the Tenth Circuit concluded additional findings were required before the request to unseal could be resolved. *United States v. Pickard*, 733 F.3d 1297 (10th Cir. 2013). After remand and the reassignment of this case to the undersigned, the court determined that the confidential DEA file should remain under seal. *United States v. Pickard*, 2104 WL 1356053 (D. Kan. 2014). After the Tenth Circuit again remanded the matter, *United States v. Apperson*, 642 Fed.Appx. 892 (2016), this court directed the government to show cause why the file should not be unsealed.

**A. Common law right of access**

The Supreme Court recognized a qualified common law right of access to judicial documents in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–99, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), under which the public may "inspect and copy public records and documents, including judicial records and documents," but noting that the right is "not absolute." The district court has the discretion to seal a judicial record, but must do so "charily." *Fed. Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987).

The Fifth Circuit recently explained the rationale for the public right of access. In *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017), the court explained that the common law right to judicial records

> promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness. [*SEC v. Van Waeyenberghe*, 990 F.2d 845,] 849 [(5th Cir. 1993)]. The right serves as a "check[ ] on the integrity of the system." *Id.* at 849–50 (quoting *Wilson v. American Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985) (alterations original)); *see also* [*United States v.*] *Holy Land Foundation*, 624 F.3d [685,] 690 [(5th Cir. 2010)] ("'Public confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view.'" (quoting *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008)) (alterations in original)).

Some circuits have limited the reach of the right, recognizing that the doctrine "does not reach materials properly submitted to the court under seal or otherwise kept confidential for important policy reasons." *In re Morning Song Bird Food Litig'n*, 831 F.3d 765, 778 (6th Cir. 2016) (citing *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989); *Times*

*Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989)). Thus, the right of access generally does not reach Presentence Reports, which "'are not treated as public records within the judicial system, but are handled and marked as 'confidential reports.'" *Id.* (citing *In re Siler*, 571 F.3d 604, 610 (6th Cir. 2009)). *See also Times Mirror Co.*, 873 F.2d at 1219 ("there is no right of access to documents which have traditionally been kept secret for important policy reasons.").

Here, the information at issue is a law enforcement agency's file concerning one of its confidential sources, a document which is not a traditional judicial record, and which was filed under seal at the direction of the judge who oversaw the defendants' trial. The Tenth Circuit determined that the common law right of access not only applied but "is particularly strong ... where the district court used the sealed documents 'to determine litigants' substantive legal rights.'" *Pickard*, 733 F.3d at 1302 (quoting *Colony Ins. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012)). "Thus, in this case, the government bears the burden of articulating an interest sufficient to overcome the strong presumption in favor of public access to the sealed CI file." *Apperson*, 892 Fed.Appx. at 899.

Consistent with this directive, the court in its recent order concluded that continued retention of the Skinner file under seal required the government to show "by particular document or class of document" the following factors:

> (1) the governmental interest in supporting retention, (2) the relative public interest in its product, (3) the extent that the document may already be in the public domain, and (4) the ability to protect the governmental interest by redaction.

3

(Dkt. 787, at 6). Following the court's order, the government submitted a response (Dkt. 790), with an accompanying revised *Vaughn* index addressing the contents of the Skinner file and invoking various grounds for retention (Dkt. 790-1), as well as an affidavit by William C. Little, Jr. (Dkt. 790-2). The defendants have recently filed objections to the government's response, arguing that the response fails to address the four factors set forth in the court's order. The defendants also argue the government's revised *Vaughn* index is deficient in additional particular respects. (*Id*. at 11-22).

The court first notes the limited nature of the government's response, which offers little in the way of argument. Rather, the response asks that the court take judicial notice of a revised *Vaughn* index that was found to be an acceptable response to a Freedom of Information Act (FOIA) claim filed by defendants in separate litigation. *Pickard v. Department of Justice*, No. 06-00185 CRB, Dkt. 222 (N.D. Cal. Aug. 27, 2015). Otherwise, the response simply incorporates what the government refers to as the "explanatory sworn declaration" by William Little.

Before reviewing in detail the government's response, the court notes that the resolution of the issue may not rest on generic considerations. In its earlier order maintaining the Skinner file under partial seal, this court noted the general "chilling effect" of divulging confidential source information, and the government's general interest in confidentiality in similar criminal cases. The Tenth Circuit did allow in *United States v. Apperson* that

> these matters are unquestionably, in principle, legitimate governmental

4

>interests, [but] they are likely to be present to some degree in virtually every case where a member of the public seeks access to law-enforcement informant files. Therefore, lest the common-law presumption of access be rendered a dead letter as to this class of cases, courts cannot justify denying disclosure by endorsing such generalized governmental interests. They must analyze the government's interests *in the context of the specific case*—with respect to particular documents or categories of documents—and explicitly undergird their conclusions with *fact-specific analysis. Absent a particularized analysis of this type, a district court has no sound legal basis for ruling on the sealing question.*

642 Fed.Appx. at 900 (emphasis added). The court concluded by explicitly "underscor[ing] that the asserted interests for sealing cannot be generic interests that would apply with equal force to every case. The government must articulate specific interests that apply in the context of *this* case." *Id.* at 904.

This court concludes that the new *Vaughn* index submitted by the government does not meet this standard.

With respect to the four factors set out in the court's prior order, the court notes first that the government's response and the accompanying Little affidavit fail to properly characterize the public interests involved. Little is the attorney in the DEA Office of Chief Counsel responsible for matters arising under the FOIA and the Privacy Act, 5 U.S.C. § 552a. Accordingly, his determination that release of the information in the Skinner DEA file "serves no public purpose" (Aff. at 4) is a conclusion that arises within the context of FOIA requests. Similarly, Little later asserts that "there was no legitimate information contained in the file under [FOIA] exemption (b)(7)(C)." Aff. at 13. This conclusion follows from the fact that "all the information contained in the file pertains to or is related to the confidential

source." Id.

But this factual assertion is erroneous in the context of this case. In contrast to a generic FOIA request for information held by a law enforcement agency, the Tenth Circuit has explicitly recognized a common law right of access to judicial records. Indeed, this public right of access is "presumptively paramount." *United States v. Pickard*, 733 F.3d at 1300 (quoting *Helm v. Kansas,* 656 F.3d 1277, 1292 (10th Cir. 2011)*)*. As a result, there is a "strong presumption in favor of public access to the sealed CI file." *United States v. Apperson*, 642 Fed.Appx. at 899. The government therefore fails to provide support for sealing based upon an assessment of the public interest factor of the analysis.

Second, the affidavit fails to address what information from the Skinner file is in the public arena. Little states that "from what I have seen there is no record of any release to the public." (Dkt. 790-1, Aff. at 3). But this conclusion follows from a narrow view of publication, made after stressing the agency's "physical possession of the file," and thus relates to the direct release of "any document contained in the file" ever having been "admitted into evidence." *Id.* at 3-4. But what the Tenth Circuit and this court have noted is not the documents themselves but the information contained in them. *See United States v. Pickard* 733 F.3d at 1305 ("[t]he fact that some of the sealed information has already been made public suggests that much of the information in the DEA records could be unsealed"). And the government fails to address the issue of the underlying information in the Skinner file.

Third, the affidavit wholly fails to address the possibility of particularized

redactions . *See Pickard*, 733 F.3d at 1304 ("[t]he circumstances presented here would appear conducive to redaction"); *Apperson*, 642 Fed.Appx. at 894 (reviewing court must address "whether [government's] interest would be adequately served by selectively redacting the documents"). Indeed the affidavit states that Little reviewed the documents for segregability, and concluded that using such an approach to exclude information which DEA seeks to withhold "would ... result in the disclosure of no useful information, or incomprehensible words and/or phrases." *Id.* at 20-21.

Having failed to address or support retention through reference to the three factors, the court turns to the only factor which the affidavit does address – the governmental interest in retaining confidential source information.

The bulk of the Little affidavit is a description of confidential source files generally, along with descriptions of various DEA procedures, forms, and records. (Aff. at 5-17). Only the concluding portion addresses the proffered government rational for the retention of the Skinner file under seal.

And the affidavit addresses these concerns only at the most general level, and only from the perspective of a standard FOIA request. Thus, although the affidavit is correctly captioned as a criminal matter, so as to show the United States as plaintiff and Pickard and Apperson as defendants, the text of the affidavit formulaically relates that law enforcement officers "were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff," as if responding to an an FOIA request by the subject of a criminal investigation. (Aff. at 14).

The most commonly invoked rationale in the *Vaughn* index is the need to protect confidential sources and information supplied by confidential sources. The concluding portion of the Little affidavit addresses these rationales, and does so solely by reference to two statutory FOIA exceptions: Exemption (b)(7)(D) (law enforcement information from confidential sources) and Exemption (b)(7)(E) (information which could reasonably be expected to endanger the safety of an individual). As to both exceptions, the information supplied by the affidavit could be applied to any confidential source in any drug case. The evidence is not tailored to the circumstances of this case.

Thus, the affidavit prefaces this section by stating:

> If the identity of a DEA confidential source and the information they provide was not held in confidence, individuals would not be inclined to provide information if they believed their identity and/or the information they provide would not be held in confidence except as provided by law. Because of the nature of DEA's criminal investigations, any information that could identify the informant, including the informant identifier code, could subject them to serious harm, substantial repercussions, and possibly even death.

(*Id*. at 15).

The affidavit also supports the withholding of criminal case numbers (G-DEP and NADDIS) because the release of such information could damage ongoing investigations. Thus, the affidavit states as to G-DEP codes, which contain information relating to DEA case files, any release "would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings," and that "[s]uspects could decode this information and change their pattern of drug trafficking." (Id. at 17). Similarly, NADDIS numbers identify drug violators, and any "release ... could allow violators to avoid

apprehension, and could place law enforcement personnel or informants in danger." (*Id.*)

The affidavit also urges the court to limit the identification of law enforcement officers and other governmental employees because of the need to avoid danger or harassment to these individuals. But the affidavit again does so only through generic recitations, without any assessment of the current activities of officers who were involved in an investigation now almost two decades old. Instead, Little writes that such identities should be withheld to preclude possible harassment of these officers because "[t]hey were, *and possibly still are*, in possession of access to information regarding access to information regarding official law enforcement investigations." (*Id.*) (emphasis added).

The affidavit invokes the danger caused by a release of confidential information to cooperating individuals. The affidavit stresses the nature of DEA work and the historical record in which DEA witnesses or informants have be subjected to violent attack. Little writes that "the disclosure of the identities of sources of information has, in the past, resulted in several instances of physical attacks, threats, harassment, and murder and attempted murder of witnesses, agents and sources of information." (*Id.* at 19). Little has documented numerous instances of violence against DEA sources, or their family members. (*Id.*) In addition, "the identification of DEA agents would damage the agency's work, creating a risk [of] harassment and danger to its agents." *Id.* at 20.

The court is not unsympathetic to these concerns, and indeed explicitly referenced them in initially denying defendants' request for the full Skinner file. *See Pickard*, 2014 WL 789202 at *2 ("the government has shown a strong and compelling interest in the

9

generalized confidentiality of criminal investigative records"). However, as noted by the Tenth Circuit, in the case of resolving a common law right of access to judicial records, the retention of the file under seal cannot be supported by evidence applying generally to "this class of cases." 642 Fed.Appx. at 900. Instead, "the asserted interests for sealing cannot be generic interests that would apply with equal force to every case," and "[t]he government must articulate specific interests that apply in the context of *this* case, and the district court must balance those interests against the public's interest in access." *Id.* at 904 (emphasis in original).

The evidence supplied by the government does not meet this standard. The affidavit does not address the Skinner case in particular, but instead offers concerns by the DEA which, however valid from a theoretical standard, would be applicable to this class of cases generally. The hypothetical injury caused by the release of G-DEP or NADDIS numbers wholly fails to take account of the passage of time. Skinner was deactivated as a DEA source in 2003, and the affidavit makes no attempt to show that there are ongoing investigations related to the Skinner information which might be compromised by a release of the criminal codings which are now some two decades old.

Similarly, the affidavit's concern for the safety of witnesses or law enforcement agents are matters which might be invoked in every DEA case with a confidential source. The affidavit offers no particularized assessment of the Skinner case in particular, or assess the mitigation of risk that may arise from the age of the information. The affidavit presents evidence relevant to typical DEA investigations, rather than this particular criminal case:

> DEA Special Agents and Supervisory Special Agents, as well as other law enforcement officers, are *frequently called upon to conduct a wide variety of investigations*, including sensitive and dangerous undercover operations. Special agents, task force and other law enforcement officers, and confidential sources *routinely* approach and associate with violators in a covert capacity. *Many of those violators* are armed and many have known violent tendencies.

(*Id*. at 18) (emphasis added). The affidavit does not identify any particular witness or other person in this case who is likely to be targeted for violence, or identify any persons who would be likely to commit such acts. As noted earlier, the affidavit posits that agents "possibly still" have access to confidential information.

The court concludes that the government has failed to overcome its burden to show the file should not be unsealed.

**Rule 60(b) and related fraud claims**

After a through review of the now-unsealed CI file, the court concludes that defendants' claims of fraud can and should be resolved on the basis of the existing record. The court hereby denies defendants' motions for relief (Dkt. 723, 732) asserting the prosecutor committed fraud on the court in connection with their § 2255 proceedings. *See In re Pickard/Apperson*, 681 F.3d 1201, 1205 (10th Cir. 2012). The materials before the court, including the CI file, conclusively establish no fraud occurred, and the court denies defendants' request for an evidentiary hearing.

Defendants argue that the prosecutor engaged in fraud by concealing the extent of possible participation by other law enforcement agencies, thereby depriving them of

11

additional opportunities to impeach Skinner. (Dkt. 723). They also assert (Dkt. 732) as part of this "continuing and unconscionable scheme, with intent to deceive" that the government submitted materials in support of the remand which contained additional frauds on the court. Specifically, the defendants object to the description by one affiant, DEA Special Agent Karl Nichols, of the history of the investigation and the role of any other law enforcement entities (particularly OCDETF, a multiagency task force including the DEA, the IRS, and the United States Marshal's Service (USMS), and the High Density Drug Trafficking Areas (HIDTA) program). Nichols averred that it was only the DEA which investigated defendants, and any other agency's participation "was incidental or minimal." (Dkt. 241-1, p. 9, ¶ 13).

Defendants claim this statement is not only false but evidences "the prosecutor's intent to deceive this Court on remand," but they upply no credible reason for believing the statement is false. (Dkt. 732, at 3). Defendants cite OCDEFT operational guidelines requiring coordination and cooperation (*id.*, at 5-6), but nothing which mandates or even suggests that *every* particular investigation possibly funded by HIDTA or potentially connected with OCDEFT *must* involve personnel from multiple agencies.

Otherwise, defendants simply cite publicly available information discussing the general operation of OCDEFT and HIDTA. *See, e.g., United States v. Ailemen*, 986 F. Supp. 1228, 1271 (N.D. Cal. 1997) (OCDEFT "recogni[zes] a real need to pool and coordinate both resources and expertise from many different sectors of the law enforcement community"); *United States v. Alaniz*, 2017 WL 4797911, at *1 (S.D. Tex. Oct. 6, 2017) (HIDTA "provide[s]

extra training on the legality of traffic stops, which included legal study through common law"); *Golden v. State Military Dep't*, 2017 WL 3503394, at *4 (E.D. Cal. Aug. 16, 2017) (HIDTA "facilitat[es] cooperation among state and local law enforcement agencies to share information and implement coordinated enforcement activities").

Defendants' arguments are without merit. There is nothing before the court which would suggest that Nichols was anything other than truthful in representing that the DEA investigated the defendants, and the participation of other agencies was virtually nonexistent. Nichols' statement is corroborated by other submissions made by the government. The evidence does not support the claims that the FBI, IRS, USMS or any other entity played any substantive role in the investigation.

The defendants also cite two documents presented subsequent to the remand (Dkt. 730-1, 730-2), both of which fail to demonstrate the existence of any fraud. The first document is an administrative control file from the FBI's Miami Division which takes the form of a redacted FBI interoffice memo. Such files are not used to support criminal investigations, and other evidence before the court confirms that the FBI had no substantial role in the criminal investigation. The second document is an administrative file (Form 4930) from the IRS which mentions Pickard as a suspect for tax code violations, and relate to a investigation separate from the DEA controlled substances investigation which formed the basis for the present prosecution. The government independently supplied documents relating to the IRS, and the matter was addressed at trial.

The defendants have done nothing to show that the prosecutor has intentionally

deceived the court. *See United States v. Beggerly*, 524 U.S. 38, 46 (1998) ("Independent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata") (quoting *Hazel-Atlas Glass Co.*, 322 U.S. 236, 244 (1944).

Here, the prosecutor represented simply that the government had given Skinner's complete criminal history (NCIC) to defendants, that other cases cited by defendants "involved agencies not involved in this investigation" and that "[a]ny cooperation by, or investigation of, Skinner by unrelated agencies were unknown." (Dkt. 580, 49 at 55). The defendants have not shown any reason to believe that (1) the DEA was not the only agency with any substantive role in investigating their case, (2) the government knew that its representations to the court were false,(3) any such misrepresentation affected the trial in any substantive way, or (4) any resulting miscarriage of justice. *See United States v. McVeigh*, 9 Fed. Appx. 980, 983 (10th Cir. 2001) (unpublished) ("If the evidence in question was not material, a fundamental requirement for fraud on the court would be absent"); *United States v. Beggerly*, 524 U.S. 38, 47 (1998) ("under the Rule, an independent action should be available only to prevent a grave miscarriage of justice"); *Weese v. Schukman*, 98 F.3d 542, 553 (10th Cir. 1996) ("[i]ntent to defraud is an absolute prerequisite to a finding of fraud on the court").

The court has searched the extensive documentary record, including the CI file, and finds nothing which would establish that the prosecution withheld exculpatory evidence

at trial, or found any support for a claim of fraud in the § 2255 proceedings. Because the matter can be resolved on the basis of this record, the court denies the request for an evidentiary hearing.

IT IS ACCORDINGLY ORDERED this 16th day of November, 2017, that defendants' Motions for Hearing (Dkt. 723) and for Rule 60 and *Hazel-Atlas* Relief (Dkt. 732) are denied; the government's and defendants' Motions to Supplement the Record (Dkt. 724, 730) are granted; defendants' Motion for Order (Dkt. 800), seeking to compel production fo the CI file, is denied as moot in light of the present order; defendants' request for relief under Rule 60 and *Hazel-Atlas* are denied; the court hereby unseals the Skinner DEA file (Dkt. 283) (filed March 4, 2003, entered March 5, 2003) containing the "risk assessment file (RA file)" and the DEA "confidential informant file (CI file)" previously sealed by the court.

        s/ J. Thomas Marten
        J. THOMAS MARTEN, JUDGE