IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICAN,
    Plaintiff,

vs.                                                    No. 00-40104-01-JTM

WILLIAM LEONARD PICKARD,
    Defendant.

MEMORANDUM AND ORDER

In 2003, Defendant William Pickard (along with co-defendant Clyde Apperson) was convicted of conspiring to manufacture, distribute and dispense ten grams or more of a mixture or substance containing a detectable amount of 2 lysergic acid diethylamide (LSD), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and possession with intent to distribute and dispense ten grams or more of a mixture or substance containing a detectable amount of LSD, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).[1] Pickard was sentenced to life imprisonment. (Dkt. 421). The matter is now before the court on Pickard's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Pickard argues the court should reduce his sentence in light of his age, his

---

[1] The extensive nature of Pickard and Apperson's LSD enterprise is summarized in the Tenth Circuit's decision affirming their convictions, *United States v. Apperson*, 441 F.3d 1162, 1175-77 (10th Cir. 2006).

deteriorating medical condition, the risk he faces from the COVID-19 virus, and the positive role he has played in writing about the fentanyl epidemic.

The defendant has the burden to show he should be released under § 3582. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016). Even if the defendant otherwise shows that "extraordinary and compelling" reasons support a release, he must demonstrate that such a result is consistent with the sentencing factors set out in 18 U.S.C. § 3553(a).

Pickard is 74 years of age and has served 20 years in prison. He states in his motion that he suffers from chronic kidney disease, hypertension, anemia, hypothyroidism, cataracts, posterior vitreous detachment, prostatic hyperplasia, vitamin D deficiency and pre-diabetes.

The government's response focuses on BOP efforts to reduce the spread of COVID-19 within its institutions. (Dkt. 855, at 5-7). It argues that compassionate release should to be granted based on the risk to the virus to inmates in general (id. at 11-12), while acknowledging that courts may consider whether specific inmates have underlying medical conditions which make them particularly at risk. (Id. at -13-15).

The government agues that the courts should not authorize release "outside the general medical concerns that warrant early release" under U.S.S.G. § 1B1.13 cmt. n.1, as this will likely produce disparate results among defendants.

**1. Contributions to Society**

The court first addresses Pickard's argument that compassionate release should be granted in light of the many publications and materials he has produced addressing and warning of the fentanyl epidemic. The court finds that such efforts do not justify release from the defendant's lawful sentence.

Pickard's Reply correctly notes (Dkt. 860, at 1-2) that the government concedes (Dkt. 855, at 18) his fentanyl work was "praiseworthy," but at the same time entirely misses the context of the government's acknowledgment — the government stressing that it was

> ironic that the defendant would submit his praiseworthy work in this field as a basis for release from prison when he ultimately decided that engaging in significant criminal activity outweighed his more altruistic notions. This is particularly true when the defendant had already been convicted twice for controlled substances offenses prior to his work on the impact of fentanyl and the instant federal conviction.

(Dkt. 855, at 17-18). The irony is plain, and the finds that the defendant's publications are entitled to little if any weight in deciding whether to reduce his sentence.

Pickard acknowledges in his Reply that "[e]xamples of non medical reasons [for compassionate release] are rare," but cites *United States v. Walker*, 2019 WL 5268752 (N.D. Ohio, Octo. 17, 2019) as an example of such relief, being granted in that case where the defendant had "published a well-received book." (Dkt. 860, at 6).

This fails to fairly summarize the decision in *Walker*. In fact, the focus of the court's decision was "the minimum time left of [the defendant's] sentence"—14 months

3

left out of the original 132 months sentence — combined with the medical condition of defendant's mother, with the court noting:

> undisputed evidence … that his mother is suffering from Acute Myeloid Leukemia ("AML"). Her prognosis is not good, and she requires expensive, non-traditional treatment due to a genetic issue that diminishes her response to more traditional treatments. The treatments available to her are generally less effective, higher risk, and higher cost than those available to other patients.

2019 WL 5268752, at *2. The defendant's book was important only in that because of it he had "received an unusual and lucrative job opportunity [helping with a movie version of the book] that would allow him to assist with his mother's medical costs." *Id*. at *3.

The defendant has failed to show any authority that a prisoner's "good works," unrelated to any medical condition, should form a substantial basis for granting release from an otherwise appropriate sentence of imprisonment.

**2. Medical Condition**

Pickard argues that the government's response errs in focusing on the wrong comment to U.S.S.G. 1B1.13 cmt. N.1(A), the Medical Condition Note. Pickard stresses that he is seeking relief under Comment N.1(B), the Age of Defendant Note, based on his based on his age (74). Unlike the Medical Condition Note, which applies where an inmate faces a terminal illness, the Age of Defendant Note applies only to older inmates who have served at least 10 years and "whose physical and cognitive deterioration has

impaired basic human function without regard to whether these conditions, other than aging, are terminal." *See United States v. Ebbers*, 432 F.Supp.3d 421 (S.D.N.Y. Jan. 8, 2020). The defendant argues he should be released in light of his age and his health conditions, and noting this court's decision in *United States v. Perez*, 88-10094-JTM, 2020 WL 1180719 (D. Kan. March 10, 2020), suggests that at certain point no health issues at all are required. (Dkt. 860, at 18-19). Stressing in particular his kidney disease, he argues that his condition is more advanced that the defendant in *United States v. Lynn*, 89-0072-WS, 2020 U.S. Dist. LEXIS 103670 (S.D. Ala. June 15, 2020).

The court finds that Pickard's medical condition (standing by itself in independent of the risk presented by the COVID-19 virus) does not constitute extraordinary and compelling reasons for reduction of his sentence. Pickard received a sentence of life imprisonment, and it can be little surprise that a person serving such a term may face some deterioration in health.

The cases cited the defendant are factually distinct. The defendant in *Perez* had served a decade longer in prison than Pickard, and, more importantly, the government essentially agreed that extraordinary reasons existed for a release, arguing instead that the court should defer ruling on the motion for compassionate release until defendant's request for executive clemency was resolved.

*Lynn* is similarly quite distinct. In addition to kidney disease, the defendant in that case the defendant suffered:

5

a plethora of ongoing medical issues, including high cholesterol, reflux, cervical disc degeneration, enlarged prostate (benign), sleep apnea, high blood pressure, carpal tunnel syndrome, and various dental issues. Taken together, these might not indicate a serious deterioration in physical health, but there is much more [including] hypertensive retinopathy … indicat[ing] the defendant's longstanding hypertension is not in fact controlled[,] degenerative changes/osteoarthritis of the right knee, which as of November 2019 was reflected in moderate patellofemoral compartment joint space narrowing, resulting in chronic and worsening pain and swelling upon walking, significant audible clicking, pain management by injection, and a prohibition on all sports activity[,] atrial fibrillation [requiring use of] a blood thinner [which still did not prevent being] hospitalized three times for cardioversion to restore normal heart function[,] chronic kidney disease, stage 3 (moderate)[, and] coronary artery disease [with] multiple blockages of 80% and higher, resulting in multiple stents….

The defendant has presented the expert opinion of a cardiologist that the defendant's CAD is more extensive and severe than is typically seen in patients of his age. He will likely require additional stents and/or coronary bypass surgery in the next few years, failing which he is likely to suffer heart attacks, congestive heart failure, and ultimately death. The expert also notes that the defendant's chronic kidney disease is more severe than is typical of sexagenarians and that it increases the risk of cardiovascular events such as heart attacks. The defendant's atrial fibrillation will likely recur, and his sleep apnea will likely worsen. The government does not challenge this evidence.

The defendant's medical records leave no question but that his physical health is deteriorating, as they reflect that all the conditions addressed above have worsened over the past two to three years. The government makes no argument to the contrary. Nor does the government deny that this deterioration is serious, or that it is due to the aging process.

2020 WL 3229302, at *2-3 (record citations omitted).

Pickard has presented the reports of two physicians. Dr. Cameron Baston reports that his review of Pickard's medical records indicate that he suffers from stage 3 chronic

kidney disease, iron deficiency anemia, and pre-diabetes. He also states that he was "told by email communication that the patient has hypertension." In direct contrast to Lynn, who suffered from multiple serious medical conditions presenting a present threat to his life and which were not "due to the aging process," Dr. Baston writes that Pickard's conditions are occurring "because of the aging process." (Dkt. 849-5, ¶ 24). Dr. Baston makes no attempt to document any imminent threat to Pickard's life due to his medical conditions considered separately. To the contrary, his report largely focuses on Pickard's "medical susceptibility during the current viral pandemic." Id. at ¶ 16.

Dr. Thomas McNalley's letter is similar. He does not indicate that Pickard's hypertension and kidney disease will likely result is adverse consequences by themselves. Rather, his report is exclusively directed at how the defendant's underlying medical conditions puts him at risk from the COVID-19 virus. (Dkt. 849-6, at 1-2).

There is nothing in the record to show that Pickard's medical conditions are not adequately controlled in the prison environment. The defendant has not attempted to qualify the level of his hypertension, and his hemoglobin tests results suggest "pre-diabetes, meaning that [he] is more like to develop diabetes in the future." (*Id*. at 2). That is, he is at risk of ultimately contracting diabetes. The defendant has failed to show, in the terms of the policy expressed in the Age of Defendant Note, that he suffers presently from "physical and cognitive deterioration" which have "impaired basic human function" to the point that compassionate release is appropriate.

**3. COVID-19**

The remaining question is whether Pickard's hypertension and kidney disease warrant a finding of extraordinary and compelling circumstances. The government stresses that Pickard is not required to undertake dialysis for his kidney disease. With respect to his hypertension, the government cites CDC guidance:

> [I]t is unclear at this time if hypertension is an independent risk factor for severe illness from COVID-19. Hypertension is common in the United States. Hypertension is more frequent with advancing age and among men, non-Hispanic blacks, and people with other underlying medical conditions such as obesity, diabetes, and serious heart disease. At this time, people whose only underlying medical condition is hypertension are not considered to be at higher risk for severe illness from COVID-19.

This assessment may have been true at the time the cited guidance was issued, the CDC currently advises that "may increase your risk of severe illness from COVID-19."[2] *See United States v. Lavy*, No. 17-20033-JAR, 2020 WL 3218110, at *3 (D. Kan. June 15, 2020) (granting compassionate release in part because of defendant's hypertension);Similarly, the fact that defendant's kidney disease does not require dialysis is not dispositive. *See United States v. Nygren*, 16-00106-JDW, 200 WL 4208926, *12 (D. Me. July 22, 2020) (while "the CDC initially classified only those individuals with chronic kidney disease who required dialysis as being at heightened risk for severe illness," under revised guidance "having chronic kidney disease 'of any stage increases'

---

[2]  *See* People with Certain Underlying Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (**last visited July 22, 2020).

a person's risk for severe illness from COVID-19") (quoting the CDC as cited in footnote 2).

The court concludes that Pickard is at greater risk than the average inmate of suffering a severe illness should he contract COVID-19, and further that he faces some risk of exposure to the virus. Unfortunately, the optimistic portrayal of BOP efforts to limit the spread of the virus, as documented in the government's Response, has been overtaken by events. Nationwide, the BOP has completed 33,684 tests, with 9,936 showing a positive result.[3] Pickard is incarcerated at FCI Tucson, Arizona, where 11 inmates and 5 staff members have been diagnosed with the virus. No inmates or staff have died of the virus. Social distancing within the prison is difficult.

"A petition for compassionate release is not a class action challenging the BOP response to the pandemic, [nor] a vehicle to punish or reward the BOP for its response to the pandemic." *Nygren*, 2020 WL 4208926 at *13. Rather, the role of the court is to determine the relative risk faced by Pickard if he remains in prison, in comparison to his circumstances if he were released.

Here, the defendant proposes that he reside with his family in Santa Fe, New Mexico, with Trais Kliphius, a government employee for the State of New Mexico for over 18 years, and with his son Duncan, a pre-med student (neuroscience pathway) at a major Western university.  His medical conditions will be treated at nearby St. Vincent's

---

[3] *See* https://www.bop.gov/coronavirus (last visited July 23, 2020).

Hospital. His family will drive him from Tucson, have him tested for the virus at St. Vincent's, observe quarantine and provide him with protective equipment as necessary. The court concludes that a compassionate release would materially reduce his risk from substantial injury.

**4. Sentencing Factors**

Having concluded that an extraordinary and compelling rationale exists for reducing Pickard's sentence, the court must determine whether his sentence may be reduced consistent with the factors set forth in 18 U.S.C. § 3553(a). Under the statute, the court in sentencing a defendant should consider (1) the nature of the offense and the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable Guideline sentence; and (6) the need to avoid unwarranted sentence disparities among similarly-situated defendants.

The government argues (Dkt. 855, at 20-21) that release is not appropriate because of his history of drug trafficking (this being his third controlled substance conviction) and the extent of his LSD manufacturing scheme. As a result, a reduction would "run counter relative to the nature and seriousness of his offense and the need for a sentence to provide just punishment, promote respect for the law, [and] reflect the

ser4iousness of the offense." *Id*. It also notes that defendant's conduct qualified for life sentences under both the guidelines and the relevant statutes.

The court finds that a reduction in sentence is consistent with the sentencing factors set forth in § 3553(a). Pickard's offenses were serious, but having spent two decades in prison he has been seriously punished. The government correctly points out that Pickard has prior drug convictions, but does not challenge the defendant's argument (Dkt. 849, at 31-32) that the First Step Act's change to sentences for drug crimes would substantially changed the treatment of his prior offenses. The fact that Congress has changed how such offenses are treated now is relevant to the determination whether a defendant faces disparities among similarly-situated defendants under § 3553(a). *See United States v. Pullen*, No. 98-40080-01-JAR, 2020 WL 4049899, at *8 (D. Kan. July 20, 2020) (whether First Step Act's non-retroactive changes would create a "sentencing disparity is clearly relevant to the Court's consideration of the factors set forth in 18 U.S.C. § 3553(a)").

The government has not challenged the defendant's contention that, at 74 years of age, he does not pose any significant risk to society, or that he has not engaged in substantial efforts at rehabilitation. The court concludes that the 20 years the defendant has spent in prison is sufficient to serve the goals of incapacitation, deterrence, retribution, and rehabilitation. The § 3553(a) factors support reducing defendant's sentence to time served, to be followed by a five-year term of supervised release. (Dkt. 421, at 3).

IT IS ACCORDINGLY ORDERED that defendant's Motion for Compassionate Release (Dkt. 849) is granted, and his term of imprisonment is reduced to time served.

*J. Thomas Marten*
J. Thomas Marten, Judge